William G. TATE, Appellant,

v.

David Patton CROCKETT, Appellee.

Court of Appeals of Kentucky.

March 25, 1955.

Leslie W. Morris, Marion Rider, Frankfort, for appellant.

Bernard B. Davis, Shelbyville, for appellee.

CULLEN, Commissioner.

William G. Tate brought action against David Patton Crockett, seeking to recover damages for personal injuries sustained in a collision between Tate's automobile and Crockett's tractor-trailer truck. The case was submitted to a jury, which returned a verdict for the defendant. Tate appeals from the judgment entered upon the verdict for the defendant.

The appellant complains primarily of error in the instructions. The appellee, without admitting error in the instructions, maintains that in no event should the judgment be reversed, because Tate was guilty of contributory negligence as a matter of law and the defendant therefore was entitled to a directed verdict.

We think the appellee's position is well taken, as will appear from a discussion of the evidence.

The accident occurred on U. S. Highway No. 60, near the top of a long hill which slopes upward from the west to the east. There are two eastbound traffic lanes going up the hill, one being an extra lane for slow traffic, which commences at the foot of the hill around 2,000 feet from the point of the collision. At the time of the accident, which was around 12:30 a. m., the Crockett truck, headed east, was stopped in the center lane. The Tate automobile, going east, ran into the back end of the truck. The weather was rainy.

The Crockett truck, for reasons which here are not important, was stopped on the highway some 30 or 40 minutes before the accident. Five lights on the back of the truck were left burning, and in addition the driver adjusted the stop light so that it remained on, with the result that there were six lights showing on the back of the truck at the time of the accident.

Shortly after the truck first stopped, a motorist named Johnson, coming from the west, stopped to render assistance. He testified that as he approached he could see the truck clearly from a distance of 250 yards. When asked about the lights on the rear of the truck, he said, "Had on his parking lights, overhead lights. Every light he had that would light was on."

Mr. Johnson assisted the truck driver in putting out flares. He stated that three flares were placed behind the truck; one near the left wheel, another about 15 yards back of the truck in the center lane, and the third about 50 or 60 yards back of the truck in the center lane. He was not absolutely positive that the second and third flares were in the same position at the time of the accident, but he did not see anyone move the flares before the accident. Some witnesses who arrived *after* the accident did not see any flares in the center of the road, but did see one flare some distance behind the truck on the *north* side of the highway.

The truck driver's testimony concerning the flares was substantially the same as that of Mr. Johnson. It may be observed at this point that there was no evidence that any person was around the scene before the accident who could have moved the flares, and no witnesses testified that the flares were not standing in their original position immediately before the accident.

One automobile approaching from the west had stopped to offer assistance to the truck driver before the arrival of Mr. Johnson, and during the period between the arrival of Mr. Johnson and the accident a number of vehicles passed with no difficulty.

A few moments before the accident, a car headed west, occupied by a soldier, stopped in the westbound lane to offer assistance to the truck driver. As he drove away, Mr. Johnson saw and heard the Tate car approaching from the west. At this time Mr. Johnson was standing in the center lane, about 30 feet behind the truck. He ran another 30 feet towards the approaching Tate car, waving his arms as a signal. The Tate car continued towards him without reducing speed, and when he saw that the

car was not slowing down, he jumped to the side to avoid it. The driver of the Tate car, according to Johnson, first applied his brakes at a point about 60 feet back of the truck. The Tate car ran square into the back of the truck.

Mr. Tate was rendered unconscious by his injuries, and he had no recollection upon the trial concerning the circumstances of the accident. However, three passengers in his car testified. Two of the passengers, Miss Wells and Miss Luscher, were in the front seat, and the third, Mrs. Caudill, was in the back seat.

Miss Wells testified that before the collision she was "looking toward the road" but she did not see any lights or flares, nor any man in the road, nor did she see the truck until "we was just right up on it." She made no claim of being blinded by lights of the westbound soldier's car; in fact she made no mention of that car. Concerning the lights on the back of the truck, she said, "I don't remember seeing any—I couldn't say whether they were or not. I don't know."

Miss Luscher testified that as they rode along she was "looking straight ahead" at the road. She did not see any lights or flares, nor any man in the road, and she did not see the truck until the actual moment of the collision. She said nothing about the soldier's car, or any westbound car. She would not say there were no lights on the truck; only that she did not see any lights.

Mrs. Caudill had no recollection of seeing anything in the highway until the moment of the collision. However, in a written statement given before the trial, she said, "I do remember that the rear end of the truck was well lighted."

None of the passengers in the Tate car testified as to any reduction of speed or application of brakes until a split second before the collision.

■ From the foregoing resume of the evidence, we think it is beyond question that Tate was negligent as a matter of law in failing to keep a proper lookout. It is undisputed that the rear of the truck was well lighted, and that there were at least two flares burning on or near the highway west of the truck. It also is an undisputable fact that Mr. Johnson was standing in the highway, some 60 feet back of the truck, waving his arms. There was no claim by the passengers in the Tate car that their vision was impeded by the lights of oncoming cars. Mr. Johnson testified that the truck was visible for 250 yards. A number of other motorists had passed by with no difficulty. There was no car preceding the Tate car to interfere with Tate's view. There was ample room on either side of the truck to pass by.

If Mr. Tate had been keeping even a slight lookout he could not have failed to see the flares, the lights, Mr. Johnson, and the truck, in time to avoid a collision. Instead, he proceeded, at a speed all witnesses agree was not less than 45 miles per hour and some say was as high as 70 miles per hour, until he almost struck Mr. Johnson and was within only 50 or 60 feet of the truck.

No excuse for Mr. Tate's conduct is offered, such as there was in Jack Cole Company v. Hoff, Ky., 274 S.W.2d 658, where the plaintiff contended that a vehicle proceeding in front of him had impeded his view of the parked truck, and that oncoming traffic in the left lane prevented him from passing on the left. There was a similar excuse in Ashton v. Roop, Ky., 244 S.W.2d 727, where the parked car had either no lights or very dim lights, and the plaintiff was blinded by the lights of an oncoming car. Likewise, in Carpenter v. Page Bros. Motor Co., Ky., 242 S.W.2d 993, there were only two dim lights on the back of the parked vehicle, and the plaintiff saw the vehicle but at first assumed it was moving. In Bosshammer v. Lawton, Ky., 237 S.W.2d 520, the plaintiff skidded on an icy hill, after another vehicle had moved into the path he intended to take around the parked car. In De Buyser v. Walden, Ky., 255 S.W.2d 616, the parked vehicle did not have any lights, and the plaintiff was blinded by the lights of an approaching car.

The unmistakable conclusion is that none of the occupants of the Tate car were paying any attention to the highway. Their testimony that they did not see any lights or flares, or any man in the road, can be

accepted only as evidence that they were not looking. It cannot be given any weight as evidence that there were no lights, flares or man, in view of the overwhelming positive evidence to the contrary.

The plaintiff being negligent as a matter of law, the only question that remains is whether his negligence so contributed to the accident as to bar his recovery. Employing the standard "but for" test of proximate cause as applied to the plaintiff's negligence, it is obvious that the accident would not have occurred but for Tate's negligence in failing to keep a proper lookout. Reasonable minds could not disagree on the proposition that if Tate had been keeping a proper lookout, he would have had ample opportunity to avoid the accident. It is not necessary that Tate's negligence have been the sole cause of the accident; it is sufficient that it contributed to the extent that the accident would not have occurred but for his negligence. McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933.

It being our opinion that Tate was guilty of contributory negligence as a matter of law, the judgment for the defendant was proper.

The judgment is affirmed.