## FORD *v.* BRADFORD

[No. 176, October Term, 1956.]

*Decided June 6, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge of the Second Judicial Circuit, specially assigned.

Submitted on brief by *Jeremiah T. Riley* for the appellant.

*Lansdale G. Sasscer, Jr.,* with whom were *Jerrold V. Powers* and *Sasscer, Clagett & Powers* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant filed suit in the Circuit Court for Prince George's County to recover for personal injuries and property damages allegedly sustained when his automobile ran into the rear of a tractor-trailer owned by the appellee. At the close of the appellee's case, the Court directed a verdict in favor of the appellee, and it is from this action of the trial Court that this appeal is taken.

In considering whether this ruling was correct, this Court must consider all of the evidence offered by the appellant in a light most favorable to him, and draw therefrom such inferences as may naturally and legitimately be deduced therefrom which tend to support the appellant's right of recovery. And, as the ruling in this case was made at the conclusion of the appellee's testimony, we shall consider, in accordance with the general rule, any evidence offered by the appellee that tends to cure a defect in, or contributes favorably to, the proof of the plaintiff.

On the evening of December 1, 1954, between the hours of 6:00 and 6:30 P. M., the appellee's tractor-trailer was at a standstill, without lights thereon, on the Greenbelt-Glendale Road in Prince George's County. The evening was dark.

and it had been raining. The appellant was driving his passenger car along said highway approaching the rear of the tractor-trailer. The appellant testified that he had the lights of his automobile on; that he was travelling about forty to forty-five miles per hour; that there was an oncoming car going in the opposite direction; that the bright lights of this car did not "blind" him, but he "couldn't see beyond them"; that as soon as he could see beyond them, he saw, for the first time at a distance of fifty-five to sixty feet in front of him, the tractor-trailer "sitting right in the middle of the road"; and that he immediately applied his brakes and tried to stop, but was unable to do so and ran into the rear of the tractor-trailer. He further testified that the tractor-trailer was definitely on the asphalt roadway; that the right rear wheels thereof were on the asphalt; that there was one reflector on the extreme right side of the trailer that was "covered with mud"; that it was so "mudcovered you couldn't see it"; and that he had previously lost one eye completely and was required to drive with mirrors "set at all times".

The appellant then offered Corporal Thornberry of the county police who testified he arrived at the scene of the accident and noticed there was one reflector on the right rear of the tractor that was partially covered with mud, and, to the best of his recollection, the rear wheels of the tractor were on the "hard-surface" part of the road.

Whereupon, Officer Baze, also of the county police department, was called by the appellant. He testified that he was the investigating officer of this accident; that when he arrived at the location of the collision he came in from the front, passed the motor vehicles and turned around about one hundred feet to their rear; that there was a red reflector on the right rear of the trailer that illuminated with his headlights for this one hundred feet and he thought it would illuminate for a distance of three hundred feet; that the reflector was not completely clean; that the tractor-trailer was stopped "partially", i. e., about two-thirds, in the traffic lane; that the right wheels thereof were off the pavement; that the road was "slippery to a degree". He then testified in response to a question by counsel for the appellant, over objection by

counsel for the appellee, that in his opinion, the appellant was traveling at an excessive speed that was greater than reasonable and prudent "due to road conditions". He also testified that in determining the position of the tractor-trailer with respect to the shoulder of the road, the tractor-trailer was "as far over as it could go on the shoulder."

The appellee then took the stand and testified he was driving his tractor-trailer on the evening in question with his lights on; that when about a mile from the scene of the accident he went over a "bump", and immediately thereafter his engine began "spitting and popping" and the lights "went dim and bright, dim and bright"; that they went "off and on"; that, the engine and lights finally "cut plumb off"; that he "drifted" down the road about twelve hundred feet away from a curve and pulled off the side of the road as far as he could and stopped; that he got out of the truck with the intention of placing flares, but when he saw the appellant's car approaching at "quite a speed", he "jumped back" into the truck; that he observed the other car coming from the opposite direction; that shortly after he got back into his truck, the appellant ran into the rear of his trailer; that he "ran back" to see if appellant were injured; that when a Mr. Thompson arrived, they checked the electrical trouble on the tractor-trailer and discovered that a battery cable had "jumped off", and when this was replaced the lights went on and the engine started as soon as he tried it; that he "stepped" off the distance down the road in the direction from which the appellant was travelling, that his tractor-trailer would have been visible in the daytime, and this distance was about eleven hundred feet; and that he had broken off the tail light of his trailer the day before, and he knew it was off.

Mr. Thompson was then called as a witness, and his testimony corroborated that of the appellee concerning the battery terminal.

The pictures indicate a hard surfaced road in good condition and of moderate width in the country. It is fairly straight and level with good visibility in both directions from the scene of the collision. To the right of the road, facing

in the same direction as the tractor-trailer, is a dirt shoulder several feet wide, bordered by a row of large trees.

After the production of the above evidence, the appellee filed a motion for a directed verdict on the grounds that the evidence failed to show any primary negligence on the part of the appellee, and, the evidence, when considered in a light most favorable to the appellant, disclosed that he was guilty of contributory negligence as a matter of law. As stated above, the court granted this motion.

The appellant contends here that the question concerning contributory negligence on his part was one for the jury to determine. He also claims that the evidence, considered in a light most favorable to him discloses three negligent acts on the part of the appellee that should have been submitted to the jury, namely: (1) failure to maintain a red reflector on the rear of the appellee's vehicle so as to be visible for a distance of three hundred feet, as required by Art. 66½, sec. 237 (c) (d), Maryland Code (1951); (2) failure to stop or park his vehicle off the highway as required by Art. 66½, sec. 209; and (3) operating a motor vehicle with knowledge of its unsafe condition in violation of Art. 66½, sec. 234.

We shall first consider the question of primary negligence. Art. 66½, sec. 209 of the Maryland Code (1951) reads as follows:

"(Stopping, Standing, or Parking Outside of Business or Residence Districts.) (a) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twelve (12) feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway.

(b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

It has been held by the Court on many occasions that the violation of a statutory regulation is evidence of negligence, and if such violation causes or contributes to the injuries complained of it constitutes negligence. *Miles v. Webb,* 162 Md. 269, 272, 159 A. 782. The evidence viewed in a light most favorable to the appellant was to the effect that the tractor-trailer was "right in the middle of the road" with the right wheels thereof on the hard surface portion thereof; and that the appellee had "drifted" some twelve hundred feet before selecting a place to stop.

We think that whether the appellee failed to comply with the above statute and whether this failure caused or contributed to the appellant's damages presented jury questions. We hold that it was the province of the jury to determine from the evidence whether the tractor-trailer was in fact stopped upon the improved part of the highway; and, if so, was it "practical" to have stopped it off the same in compliance with the statute. This is in conformity with often repeated decisions of this Court that hold that a case will not be withdrawn from the jury for want of legally sufficient evidence, if there is any evidence, however slight, legally sufficient as tending to prove negligence, but that the weight and value of such evidence will be left to the jury. *Yellow Cab Co. v. Henderson,* 183 Md. 546, 549, 39 A. 2d 546. Of course, in submitting these questions to the jury, they should be accompanied by proper instructions which appropriately cover the other questions raised by the evidence.

Section 237, of Article 66½ of the Maryland Code (1951) in part says:

"(c) Every * * * trailer * * * operated on a highway shall carry at the rear, either as a part of

the rear lamp or separately, a red reflector meeting the requirements of this section.

"(d) Whenever a red reflector is required * * * under * * * this Article, * * * such reflector shall be so designed and maintained as to be visible at night from all distances within 300 feet to 50 feet from such vehicle when directly in front of a motor vehicle displaying lawfully lighted head lamps * * *."

The evidence most favorable to the appellant that specifically relates to the above section is: that the red reflector was "covered with mud"; that it was so "mudcovered you couldn't see it." In jurisdictions where the subject of muddy and dirty reflectors to a degree affecting their visibility has been raised, the question of negligence *vel non* seems consistently to have been submitted to the juries, with proper instructions relative to the remainder of the evidence. 21 A. L. R. 2d. p. 155. We think this is the proper rule, and should have been followed in this case. The statute states the requirements of reflectors. Therefore, when submitting this issue to the jury, the Court should inform the jury of these requirements (having due regard for section 235 (b)) and instruct them that if they find as a matter of fact a failure in these requirements, this failure is evidence of negligence; and, if the jury further find that such failure was a proximate cause of the appellant's damages, it constitutes negligence.

The appellee admitted that he knew he had broken the tail light off the trailer the day before the accident and it had not been replaced. The appellant insists that this was a violation of section 234 of Article 66½ and, therefore, constituted primary negligence on the part of the appellee. Whether this constituted actionable primary negligence depends upon whether or not it was one of the proximate causes of the damages. It frequently has been held that the mere violation of a statute does not support an action for damages unless the act that constituted a breach of the statute was a proximate cause of the damages. *Hopper, McGaw & Co. v. Kelly*, 145 Md. 161, 169, 125 A. 779; *Friedman v. Hendler*

*Creamery Co.,* 158 Md. 131, 142, 148 A. 426; *Krause v. B. & O. R. R. Co.,* 183 Md. 664, 668, 39 A. 2d 795. In this case, the evidence is uncontroverted that an unforeseeable electrical failure caused the truck to stop; consequently the failure to have the tail light on the tractor-trailer could have no causal connection with the damages of the appellant. The mere failure to have the tail light on the tractor-trailer alone, although a violation of the statute, does not give rise to a cause of action for damages.

We shall now consider the question of contributory negligence. At an early date, it was held in several jurisdictions that where a motorist proceeding on the highway has his vision interfered with by glaring or dazzling lights it called for an application of the rule (accepted in some jurisdictions) that requires motorists to operate their vehicles so as to be able to stop within the assured clear distance ahead. Where this rule is applied, it is usually held that the motorist blinded by lights must either stop (if his vision be cut off completely) or proceed at such a rate of speed and with such control of his vehicle as to be able to stop in time to avoid any discernible object in the road ahead. 22 A. L. R. 2d 300. However, many Courts, considering this rule impractical under modern traffic conditions, have repudiated or refused to adopt it; and have applied instead the more flexible standard of ordinary care under the circumstances, and have held that a motorist, by merely continuing on his course after his vision has been interfered with, should not be held guilty of negligence as a matter of law. 22 A. L. R. 2d 310; *Miles v. Webb,* 162 Md. 269, 273, 159 A. 782. Cf. *Williams v. State,* 161 Md. 39, 155 A. 339; and *Singleton v. Roman,* 195 Md. 241, 250, 72 A. 2d 705.

This Court has had to deal with the question of approaching lights affecting a motorist's vision on at least five occasions. In *Mears v. McElfish,* 139 Md. 81, 83, 84, 114 A. 701, it was held that the fact that the lights of the oncoming car made it more difficult to see pedestrians did not relieve a motorist of the duty to use proper care to observe their presence, and, if the motorist did not see anyone, he should have reduced his speed and given warning signals to anyone pos-

sibly exposed to danger. In *Transportation Co. v. Mumford,* 154 Md. 8, 10, 139 A. 541, there was a holding that a passenger in an automobile, whose operator was prevented from seeing a truck parked on the roadway by fog, mist and dazzling headlights of another car, was not contributorily negligent as a matter of law. It was pointed out that the automobile in which the passenger was riding was being operated at a moderate rate; and that she had no control over the operation of the car in which she was riding, and she did not see the truck until the moment of impact. In *Williams v. State, supra,* 161 Md. 54, this Court stated that when the vision of a driver is so obstructed or obscured by the lights of an approaching car that he cannot see anyone in the road in front of him, it is his duty to increase his diligence to avoid injury to anyone who might rightfully be on the road in front of him. In *Miles v. Webb, supra,* the facts were strikingly parallel to those in the present case. There, the plaintiff, while traveling between thirty and forty miles per hour, rounded a corner in the highway and he saw some lights coming down the road. The lights blinded him until the approaching car passed, and when he could see again after it had passed he was so close (about 40 feet) to a parked truck that had no lights upon it he could not avoid colliding with it. This Court held that the trial Court's refusal to grant a prayer for a directed verdict on the ground of contributory negligence, under the circumstances, was correct and the case was properly submitted to the jury. In *Singleton v. Roman, supra,* 195 Md. 249, where the defendant ran into an abutment on the side of the road, there was a holding that the motorist, who has his vision obscured by approaching lights, is not relieved of his duty to exercise ordinary care to observe objects along the side of the road; and, if he be prevented from seeing such objects by the glare of the lights, he should reduce his speed.

We think that in determining whether a motorist was contributorily negligent as a matter of law in failing to observe a stationary vehicle obstructing the highway ahead, no hard and fast rule should be laid down. The surrounding circumstances and the facts of the particular case should be con-

sidered, the test being what an ordinarily prudent person would have done under the circumstances as they existed at the time of the accident. We think this conforms to the previous decisions of this Court, and is the proper rule. *Marshall v. Sellers,* 188 Md. 508, 514, 53 A. 2d 5; *Miles v. Webb, supra; Transportation Co. v. Mumford, supra; Cyc. of Auto. Law and Practice, Blashfield,* par. 2755. We conclude that under the circumstances of this case, the question of contributory negligence on the part of the appellant should have been submitted to the jury.

*Judgment reversed, with costs, and case remanded for a new trial.*