JOHN EMERETT COLMES ET AL. *v.* THE JOS. M. ZAMOISKI CO.

[No. 69, September Term, 1972.]

*Decided August 9, 1972.*

The cause was argued before ANDERSON, POWERS and GILBERT, JJ.

*William N. Rogers,* with whom were *Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid* on the brief, for appellants.

*Theodore R. McKeldin, Jr.,* with whom were *Weinberg & Green* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellee, The Jos. M. Zamoiski Co. (Zamoiski), sued John Emerett Colmes (Colmes), and his employer, Francis O. Day Co., Inc. (Day), in the Circuit Court for Prince George's County. As a result of that suit, Zamoiski recovered, in a non-jury trial, a judgment for $6,458.07 against Colmes and Day. The sum of $5,258.07 of that judgment was for property damage and $1,200.00 was for the loss of use of the vehicle belonging to Zamoiski.

Colmes and Day assail the judgment in a two-fold manner, that is, (1) that the trial judge erred in finding Colmes and Day negligent "notwithstanding the emergency existent," and (2) that the trial judge likewise erred in failing to find that Zamoiski was guilty of contributory negligence as a matter of law.

We agree that Zamoiski was guilty of contributory negligence as a matter of law, and we reverse the judgment of the trial court. In view of our holding, we do not reach the appellant's first contention.

The testimony established that on March 16, 1971, on a bright, clear, sunshiny day, at approximately 3:45 p.m., Colmes was operating a 10 wheel tandem dump truck, owned by Day, in a westerly direction on the Capitol Beltway, en route to Rockville, Maryland from Brandywine, Maryland. At that time the Capitol Beltway was a three lane highway.[1] Colmes was in the extreme right lane behind what he described as a dark green, Ford flatbed truck. Just as Colmes changed to the center lane, apparently in order that he could pass the Ford truck, a wheelbarrow fell off the side of the Ford and Colmes's vehicle collided with the wheelbarrow. He stated that he dragged it "ten or fifteen feet." The reason that Colmes assigned for hitting the wheelbarrow was that he was unable to swerve into the left lane because of the presence there of other vehicles. The point of impact was east of the Capitol Beltway's interchange with St. Barnabas Road, and just beyond the crest of a slight rise. Colmes testified that he observed that no one was behind him in the center lane so he stopped his truck completely on the roadway and put on his "blinkers" (emergency flashers). He alighted from the truck in order to extricate the wheelbarrow from underneath the vehicle. Colmes said, "So just as I was laying down to get the wheelbarrow I looked up and saw this truck [Zamoiski]. I saw this truck coming. I got out and waved my hand. He didn't see me. He ran into the back of

---

1. Since the time of the accident a fourth lane has been added.

it." The color of the dump truck was yellow. It also was seemingly partially covered with generous portions of rust.

The testimony of Trooper Michael P. Musial was that visibility from the point of impact was clear, looking to points eastward, for approximately one-third of a mile.

Zamoiski's driver said that he was travelling at a speed of "approximately fifty-five" miles per hour, "no more than sixty." He testified that he saw no directional signals, brake lights, flashers, or other type of signal, and Day's truck was "maybe seventy-five to a hundred feet" ahead of him when he first saw it. He was unable to change lanes to avoid the collision because there was "traffic on both sides" and he "couldn't stop." He applied his brakes and was travelling "forty, forty-five" miles per hour at the point of impact. There was no testimony relative to any skid marks.

The trial judge found that the point of impact occurred:

"* * * on a slight down grade, but we do not feel that being on the down grade would act as a complete bar to say that you suddenly come upon a vehicle you could not see a distance back. The photographs do not show it, and we do not feel there are such grades on the beltway, and we are fairly well familiar with this particular one.

"Insofar as lights are concerned the defendant [Colmes] testifies he turned on warning lights, but he does not know whether they were on the back or not. He had checked them that morning, and he knew they were on in the front, but he did not notice this time. The plaintiff said he did not see any warning lights. The defendant indicates he crawled out from under the truck when he saw this truck [Zamoiski] coming and tried to signal. We have some problem rational-

izing, reasoning out this happening with the light situation, but certainly in the center of the Capitol Beltway no one has any reason to see a truck stopped. You expect everyone is moving along unless there is some warning, and while we feel that the plaintiff saw the truck in front of him we are not convinced by any means that he saw him in time to stop after realizing that he was stopped, not moving on. * * *"

We believe the trial judge may have misinterpreted the testimony of Colmes with respect to the flashers, but, in any event, if Zamoiski's driver did not see the stopped dump truck until he was 75-100 feet from it, when, according to Trooper Musial, visibility was unobstructed for one-third of a mile, then Zamoiski's driver obviously either was not looking or was paying no attention to what he was seeing. Even if the flashers were not functioning, Zamoiski's driver would not be relieved of his contributory negligence. Had Zamoiski's driver been attentive, he would have observed the truck for a distance of one-third of a mile, or at least in time to halt his vehicle. He should have perceived that the truck in the lane ahead of him was not progressing, and taken proper precautions.

We observed in *Mazer v. Stedding*, 10 Md. App. 505, 507, 271 A. 2d 381 (1970), that:

"* * * a person of ordinary intelligence, with unimpaired eyesight, who says that he did not see an object which, had he used his senses, he, in the nature of things, must have seen, is not to be credited."

In *Ford v. Bradford*, 213 Md. 534, 544-545, 132 A. 2d 488 (1957), the Court of Appeals said:

"We think that in determining whether a motorist was contributorily negligent as a matter of law in failing to observe a stationary vehicle obstructing the highway ahead, no hard

and fast rule should be laid down. The surrounding circumstances and the facts of the particular case should be considered, the test being what an ordinarily prudent person would have done under the circumstances as they existed at the time of the accident."

We believe, under the facts of this case, that a person of ordinary prudence would have seen a stationary vehicle obstructing the highway ahead and acted in such a manner as to avoid a collision.

The Court of Appeals in *People's Drug Stores v. Windham,* 178 Md. 172, 185, 12 A. 2d 532 (1940), said:

"The suggestion submitted by the appellant that a 'driver is entitled to assume, in the absence of warning, that the way ahead is free from obstructions or dangers of any kind' is not only bad law but pointless when considered in connection with the facts of the case.

\* \* \*

"One who operates a motor vehicle on a public highway must anticipate the presence of others thereon, and must exercise constant vigilance to avoid injuring them, and if his view is obstructed by smoke, fog, rain, snow, sleet, or other atmospheric conditions, he must so operate it as to be able, by the exercise of reasonable care, to avoid injuring others, themselves in the exercise of ordinary care. \* \* \* Certainly a blind man should not be permitted to drive so dangerous a machine as an automobile on the public highways, and yet one who has normal vision but fails to use it is in no better case."

In *Dashiell v. Moore,* 177 Md. 657, 666, 11 A. 2d 640 (1940), the Court of Appeals, quoting from *Huddy on Automobiles,* sec. 371, said:

" 'It may be stated as a general rule that the driver of an automobile is charged with notice

of such conditions in and along the road as he should have seen. In other words, he is conclusively presumed to have seen such surrounding circumstances as he would have seen had he properly exercised his faculty of vision. The duty to look implies the duty to see what is in plain sight unless some reasonable explanation is shown. *Where there is nothing to obstruct the vision of a driver, it is negligence not to see what is clearly visible.'*" (Emphasis supplied).

Similar holdings premised upon a driver's duty to perceive the obvious are found in *Baltimore Transit Company v. Prinz*, 215 Md. 398, 137 A. 2d 700 (1958) ; *Victor Lynn Lines, Inc. v. State*, 199 Md. 468, 87 A. 2d 165 (1952) ; *Banner Transfer Company v. Morse*, 274 S.W.2d 380 (Ky. 1954) ; *Tate v. Crockett*, 277 S.W.2d 22 (Ky. 1955).

*Dashiell v. Moore, supra,* is dispositive of this case. Here, there was nothing "to obstruct the vision of [the] driver." It was negligent not to see what was clearly visible and thus avoid collision with it.

Applying the principles set forth in *Ford v. Bradford, supra; Dashiell v. Moore, supra,* and other cases herein cited, to the facts in the instant case, we have no hesitancy in holding that Zamoiski's driver was, under the facts of this case, guilty of contributory negligence as a matter of law.

*Judgment reversed.*
*Costs to be paid by the appellee.*