BARBARA FOUCHE, Personal Representative of the
Estate of James Wilson Fouche, Jr. et al. *v.* RUTH
ARLENE MASTERS

[No. 123, September Term, 1980.]

*Decided October 16, 1980.*

The cause was argued before MOORE, LOWE and WILNER, JJ.

*Conrad W. Varner,* with whom was *W. Berkeley Mann, Jr.,* on the brief, for appellant Fouche. *Clater W. Smith, Jr.,* for appellant Ridings.

*John Wheeler Glenn,* with whom were *Edwin F. Nikirk* and *O'Connor, Preston, Glenn & Smith, P.A.* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this automobile negligence case arising out of a head-on collision, a jury awarded $50,000 damages to an injured passenger against both the host driver and the personal representative of the driver of the second car who died of injuries sustained in the crash. On appeal, the host driver maintains that the trial court (Barrick, J.) erred in overruling his motion for a directed verdict because (a) he was faced with an emergency and there was no evidence that he failed to exercise due care and (b) the testimony of the plaintiff passenger exonerated him. The personal representative presents a single issue: that the trial court erred in reading Md. Transp. Code Ann. § 21-902 (a) (Driving while intoxicated) and § 21-902 (b) (Driving while ability impaired by alcohol) as part of its jury instructions.

I

The relevant facts are largely undisputed. On June 3, 1978, appellee, Ruth Arlene Masters, 53, a widowed schoolteacher, and appellant, Noble Benjamin Ridings, Jr., a friend and companion of some fifteen years, had a dinner date in Thurmont, Maryland.[1] Shortly after 8:00 p.m., they left the restaurant and proceeded to drive south on U.S.

---

1. Masters testified that they had a pitcher of beer but Ridings had only one glass with his dinner. Ridings testified at a pretrial deposition and again at trial on cross-examination that he had three glasses.

Route 15 in Ridings' Chrysler with Ridings behind the wheel. Masters testified that although it was not quite dark, "[i]t was misty — it hadn't started to rain yet, just a dreary evening." Route 15 was a 24-foot wide, two-lane highway divided by a painted center line which permitted one lane of traffic to travel in each direction. Adjoining each lane was a 12 foot asphalt shoulder thus extending the width of the highway to a total of 48 feet. On the evening in question, traffic was light.

The appellee, Masters, testified that she observed the headlights of an oncoming car in their southbound lane about 100 to 125 feet away. When questioned about the car approaching in their own lane Masters responded, "I'm positive. I have nightmares about that yet, I see those lights coming at us." Masters also testified that the driver of the approaching vehicle, appellant Fouche's decedent, James Wilson Fouche, Jr., age 21 (hereinafter "Fouche"), was slumped over the wheel and shortly before impact, raised his head and steered his car back into the northbound lane. Ridings, in his testimony, said that he was proceeding at about fifty miles per hour when he first saw the Fouche vehicle and that its speed was about the same. He removed his foot from the accelerator and watched to "see what he was going to do." He then described the final tragic moment: "Then I saw he wasn't going to go back in his lane so I swerved over, I turned over in the left lane, and at the same instant I did that, the other driver did the same thing." When asked why he (Ridings) didn't swerve to the right instead of the left, Ridings responded: "[D]idn't think about it."

A Maryland State trooper, who investigated the accident shortly thereafter, testified that the point of impact was approximately 3½ feet east of the center line in the northbound lane. Contact was made between the left-front section of each vehicle. He also testified that upon arriving at the scene, Fouche's vehicle was partially in the northbound lane and partially on the shoulder adjoining that lane. The Ridings vehicle was straddling the center line facing in a southeasterly direction. A gouge mark in the

pavement appeared in the northbound lane and a set of skid marks extended from the southbound lane into the northbound lane.

James Wilson Fouche, Jr., driver of the northbound automobile, a Ford Mustang, was critically injured in the accident and died in the Emergency Room of the Washington County Hospital within three hours. Both Ridings and Masters were injured, Masters more seriously. A post mortem chemical analysis performed on Fouche by a toxicologist of the State Medical Examiner's Office, disclosed that his blood alcohol level was 0.17 percent. The report was, by stipulation, received in evidence.

The appellee, Ruth Arlene Masters, filed suit in the Circuit Court for Frederick County against Noble Benjamin Ridings, Jr., and Barbara Fouche, mother of the deceased driver, as personal representative of his estate, for damages resulting from the alleged negligent operation of both automobiles. Ridings moved for a directed verdict at the close of the plaintiff's case on the ground that the evidence showed an emergency situation created entirely by Fouche and that Ridings' response by turning into the northbound lane was, as a matter of law, not negligent. Ridings also argued that the uncontradicted testimony of Masters clearly exonerated him from liability. The trial court overruled Ridings' motion, stating:

> "The Court has considered Mr. Smith's motion for directed verdict and has read the case of *Virginia Freight v. Montgomery*, reported in 256 Md. 221, and the Court will overrule the motion since this case points out that the operation of a motor vehicle in violation of the Transportation Article [§ 21-301] by driving across the center line is prima facie evidence of negligence and the burden is upon the driver to overcome the presumption of negligence by showing that under circumstances such as the condition of the road or an emergency in the traffic he was justified in driving across the center line. There is no evidence of emergency situation in this case nor any condition of the road which would

overcome this presumption, and therefore the motion is overruled." [2]

* * *

"I think from her [Masters] testimony that the jury could also very well decide that Mr. Ridings was negligent in crossing the center line, and she did not exonerate him as I heard her testimony, and upon cross-examination Mr. Varner pointed out that in her declaration she accuses him of negligent driving, so for those reasons the motion will be overruled."

Ridings' motion was renewed at the conclusion of the entire case and was again overruled.

## II

Ridings contends that the trial court erred in overruling his motion for a directed verdict. He argues that the undisputed testimony clearly establishes that he was confronted with an emergency and was not guilty of any negligence causing or contributing to the accident. He cites *Virginia Freight Lines, Inc., etc. v. Montgomery,* 256 Md. 221, 260 A.2d 59 (1969) and *Mason v. Triplett,* 217 Md. 433, 141 A.2d 708 (1958) as controlling authorities. We have carefully examined and considered each case.

In *Montgomery,* plaintiff's tractor-trailer was southbound at about 4:30 p.m. on a May afternoon, on a two-lane road with traffic proceeding in a single lane in each direction. The highway shoulders, adjacent to each lane, were approximately 6 to 8 feet in width. They were described as "fairly hard." The plaintiff's driver, Asa Nickens, was traveling at about 40 miles per hour behind another truck at a distance of 300 to 500 feet. The weather was "clear" and

---

[2]. The court, however, in its subsequent instructions to the jury, submitted for their consideration the question whether Ridings was "confronted with an emergency situation by reason of the presence of the Fouche vehicle in his lane of traffic. . . ."

the surrounding area was "open country." When the truck directly ahead of the plaintiff suddenly pulled over to the right shoulder, Nickens observed an automobile driven by the defendant, Montgomery, approaching in the same lane from the opposite direction. The defendant's automobile was less than 150 feet away. Nickens testified that he could not drive onto the right shoulder because of the presence of the other truck. He, therefore, veered away to the left into the northbound lane and his right front wheel hit the right front wheel of Montgomery's car. No personal injuries were sustained. Nickens' employer brought suit for property damages in excess of $4800. The trial judge, finding for Montgomery, stated that the only question was whether the driver of the plaintiff's tractor-trailer was guilty of contributory negligence and applied the rule set forth in *Cocco v. Lissau,* 202 Md. 196, 199, 95 A.2d 857, 858 (1953):

> "A driver who violates this 'rule of the road' [Md. Transp. Code Ann. § 21-301 (1977) requiring vehicles to be driven upon the right half of the roadway] is *prima facie* guilty of negligence where the violation directly and proximately causes a collision and injury to another traveler on the road, and the burden is then cast upon the driver to overcome the presumption of negligence by showing that under the circumstances, such as the condition of the road or an emergency in the traffic, he was justified in driving in the center or upon the left half of the road."

The lower court then concluded that Nickens was not confronted with an emergency. On appeal, the Court of Appeals reversed, stating "[a]lthough Judge Carter found a few additional 'inconsistencies' and 'contradictions' [in the testimony] we think, all things considered, that Nickens did react to an emergency traffic condition which arose because Montgomery was driving his car in the wrong traffic lane." *Id.* at 227. The Court, in an opinion by Judge McWilliams, went on to consider the question of whether Nickens breached the standard of care owed under the circumstances

of an emergency and concluded that he was not negligent by swerving to the left. In dicta the court suggested that even had the right shoulder been clear, its conclusion would have been the same. The Court stated in part:

> "[W]e have no difficulty concluding that by swerving to the left, Nickens did only what any reasonably prudent man would have done faced with a like emergency. *Nor would our conclusion differ had we assumed, for the sake of argument, that Nickens' access to the right shoulder was not blocked as he claimed.*" (Emphasis added.) *Id.* at 228.

*Mason v. Triplett, supra,* also involved a collision with a vehicle proceeding in the wrong lane of traffic. Mason was driving a 1954 Lincoln in a northerly direction on the proper side of a two-way street, 22 feet wide, with 6 foot gravel shoulders. The time was about 8:00 p.m. in late January. It was dark and the weather clear. While driving at a speed of 25 miles per hour, he observed a pair of headlights, four or five car lengths ahead, on his side of the road. After swerving to the left at about a car length away to avoid the oncoming car, a 1953 Ford, the impact occurred.

A passenger in the Ford filed suit against both drivers and the owner of the Ford. Mason sued the driver and the owner of the Ford. In a consolidated trial, the jury returned a verdict for the passenger against both drivers and a verdict for the Ford driver in Mason's suit.[3] Mason appealed, contending that his motion for a directed verdict and judgment *n.o.v.* should have been granted in the passenger's suit and that his prayer to withdraw from the jury the issue of his contributory negligence should have been granted in his action. The Court of Appeals found error and reversed the judgment for the passenger against Mason and the judgment for the driver of the Ford in Mason's suit. (Chief Judge Brune and Judge Hammond, later Chief Judge, dissented.) On the issue of Mason's negligence, the majority stated:

> "The appellees contend that several inferences of

---

3. The court directed verdicts for the owner of the Ford in each case.

negligence on the part of Mason can be drawn from the testimony and the physical facts. We do not agree. The uncontradicted evidence is that Mason was on his proper side of the road, when suddenly he saw a vehicle on the wrong side of the road, with very dim lights, which had backed out of a side road and started south at an accelerated speed directly in his path. These dim lights would not have been visible to Mason until Roy started south. We think the proximate cause of the accident was the extraordinary and quite unforeseeable conduct of Roy. *If, as the appellees contend, Mason might have avoided the collision at the last moment by driving off the road to the right, instead of turning to the left, and we think this is only a matter of speculation, his action in swerving to the left at the last moment could hardly be deemed negligent."* (Emphasis added.) *Id.* at 438.

We turn now to the instant appeal and the reasons why, in our judgment, *Montgomery* and *Mason* are not controlling, as Ridings contends in support of his claim that the motion for a directed verdict should have been granted.

We are not unmindful of factual similarities between *Montgomery* and *Mason* and this case. But there are critical factual differences. In *Montgomery* and *Mason,* the highway shoulders were 6 to 8 feet wide and 6 feet wide, respectively. In the instant case, the shoulder width was 12 feet. The shoulders in *Montgomery* were "fairly hard" and in *Mason* they consisted of gravel; in the instant case, they were asphalt, identical to the roadway. Unlike *Mason* and *Montgomery,* there was some evidence of drinking by Ridings which the court may have considered in denying a directed verdict. Furthermore, the accident in *Mason,* unlike the instant case, occurred at nighttime and in a town. There, driving across the center line may well have been safer than driving onto a 6 foot shoulder. In *Montgomery,* there was an obstruction on the shoulder of the road and the Court's finding that there would have been no negligence even absent such an obstruction was dicta. In any event, the dicta

in *Montgomery* was based upon the holding in *Mason* and we find the facts in *Mason* at variance with those here present.

Driving in twilight, Ridings was, or should have been, aware of the 12-foot wide, well-paved shoulder to his right, available for use in the event of an emergency or for any other proper purpose. The Court of Appeals has not held, nor can this Court, that *any time* one is faced with an approaching vehicle proceeding on the wrong side of a two-lane road, swerving to the opposite lane to avoid a collision is *not* negligence as a matter of law. *See Lehmann v. Johnson,* 218 Md. 343, 146 A.2d 886 (1958); *Consolidated Gas, Electric Light & Power Co. v. O'Neill,* 175 Md. 47, 200 A. 359 (1938).

In ruling on a motion for a directed verdict, the trial court must consider all credible evidence and inferences fairly deducible therefrom in a manner most favorable to the party against whom the motion is made. *I.O.A. Leasing Corp. v. Merle Thomas Corp.,* 260 Md. 243, 249, 272 A.2d 1, 4 (1971); *Tippett v. Quade,* 19 Md. App. 49, 52, 309 A.2d 481, 486 (1973). We cannot find that the court erred in denying the motion when there was evidence from which the jury could have found negligence in an emergency situation. *See Warnke v. Essex,* 217 Md. 183, 141 A.2d 728 (1950).

In the light of the above evidence, direct and circumstantial, bearing upon the question of Ridings' negligence, we reject his contention that certain portions of Mrs. Masters' cross-examination exonerated him from a finding of negligence.[4]

### III

Appellant, Barbara Fouche, personal representative of the estate of James Wilson Fouche, Jr., avers that the trial judge

---

4. Appellant Ridings relies, for example, upon appellee's testimony, under cross-examination by counsel for Fouche, that "I would consider that Mr. Fouche, by being there in our lane of traffic, was the cause of us having the accident. . . . We would not have crossed that center line if that other man had not been in our lane of traffic. . . ." Fouche's counsel, on further cross-examination, based upon the declaration, reminded appellee of her allegations that Ridings negligently operated a motor vehicle so as to cross the center line, and her reply was: "When you cross the center line you are negligent, yes, but would you cross the center line if someone was coming at you?"

erred in reading Md. Transp. Code Ann. § 21-902 (a) and (b) as part of the jury instructions because the evidence of the decedent's intoxication was insufficient.

At the center of this controversy is a stipulated exhibit — a laboratory report from the State Department of Post Mortem Examiners which showed a "positive" alcohol blood content of 0.17 percent. There was, however, no explanation to the jury by expert testimony or otherwise of the meaning or significance of 0.17 percent. Appellant maintains that because the laboratory report was not explained to the members of the jury, they had no way of interpreting the report and it was prejudicial error for the court to read the above statutory provisions and to instruct upon them.

Over objection of counsel, the court read to the jury subsections (a) and (b) of Md. Transp. Code Ann. § 21-902 (1977). These provisions are as follows:

> "(a) *Driving while intoxicated.* — A person may not drive or attempt to drive any vehicle while intoxicated.
>
> (b) *Driving while ability impaired by alcohol.* — A person may not drive or attempt to drive any vehicle while his driving ability is impaired by the consumption of alcohol."

The court then explained in general terms the meaning of "intoxicated from the consumption of liquor" and "while his driving ability is impaired." The jury was also instructed that a violation of the statute by either or both drivers was evidence of negligence but that the plaintiff could not recover unless that negligence was the proximate cause of the injuries. This was, of course, a correct statement of Maryland law. *Hilton v. Williams,* 258 Md. 285, 289, 265 A.2d 746, 748 (1970); *Alston v. Forsythe,* 226 Md. 121, 130, 172 A.2d 474, 478 (1961); *Ford v. Bradford,* 213 Md. 534, 541, 132 A.2d 488, 491-92 (1957).

Neither party disputes that the question of a driver's intoxication is relevant to the issue of negligence. *Singleton v. Roman,* 195 Md. 241, 72 A.2d 705 (1950). However, there is obvious merit in Fouche's position that the jury lacked any

means of interpreting the numerical result of the chemical analysis. They could not determine from this evidence that the deceased driver had committed a violation of the statute. In this connection, it is to be noted that the jury in a civil case may not apply the presumptions relating to intoxication and impairment set forth in Md. Cts. & Jud. Proc. Code Ann. § 10-307.[5] These statutory presumptions apply in criminal prosecutions specified in § 10-307 (a) and only when certain prerequisites are met.[6] *Major v. State,* 31 Md. App. 590, 592, 358 A.2d 609, 611 (1976). Therefore, absent an explanation by an expert of the 0.17 percent disclosed in the report, the jury could only speculate as to its significance. We find the remaining evidence insufficient to warrant reference by the lower court to § 21-902 in its jury instructions.

Appellee relies on *Carter v. Correa,* 28 Md. App. 397, 346 A.2d 481 (1976) wherein the trial court, as part of its jury instructions, read Md. Ann. Code art. 66½, § 11-902 (b), the predecessor of Md. Transp. Code Ann. § 21-902 (b), making it unlawful to drive while one's ability is impaired by the consumption of alcohol. There, the evidence revealed that the defendant rounded a curve at 70 or 80 miles per hour, crossed the center line, was "loud and boisterous," and "smelled of alcohol." This Court upheld the giving of the disputed instruction because evidence of driving under the influence of alcohol was not lacking.

In *Alston v. Forsythe, supra,* a requested jury instruction based upon plaintiff's contention that the defendant was driving under the influence of alcohol in violation of Md. Ann. Code art. 66½, § 206 (1957) was refused by the lower court because of the lack of any causal relation between the

---

5. Under this section of the Courts Article, it shall be presumed that the defendant was not intoxicated or driving while impaired if there was 0.05 percent or less, by weight, of alcohol in his blood (10-307 (b)); that there is no presumption that the defendant was or was not intoxicated or impaired if there was between 0.05 and 0.10 percent but may be considered with other evidence in determining guilt or innocence (10-307 (c)); that 0.10 percent, or more, is prima facie evidence that the defendant's driving ability was impaired (10-307 (d)); and, that 0.15 percent, or more, shall be prima facie evidence that the defendant was intoxicated (10-307 (e)).

6. Md. Cts. & Jud. Proc. Code Ann. §§ 10-302 to 10-309. *See* Loscomb v. State, 45 Md. App. 598, 416 A.2d 1276 (1980) wherein this Court applied certain of these provisions to a criminal prosecution for violation of Md. Ann. Code art. 27, § 388 and § 388A.

alleged drunken driving and the accident. The omission was affirmed on appeal. The Court of Appeals noted that the only evidence of impairment or intoxication was that the defendant had "two beers" and "smelled slightly of beer or whiskey." *Compare Thomas v. State,* 206 Md. 49, 109 A.2d 909 (1954) *and Walker v. Hall,* 34 Md. App. 571, 369 A.2d 105 (1977) *with Singleton v. Roman, supra, and Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 149 A. 4 (1930).

In the instant case, there was no evidence presented of the decedent's condition before he began driving, no admission of alcohol consumption, and no observable conditions of intoxication such as demeanor evidence or general appearance. Although the manner of operation of an automobile by an alleged violator could be evidence of driving under the influence or driving while impaired, *Carter v. Correa, supra,* we do not believe absent an explanation of the 0.17 alcohol blood content that driving on the wrong side of the road and the driver's being slumped over the steering wheel is sufficient to permit the aforementioned instruction. Nor do we agree with appellee's alternative contention that the instruction given here was harmless.

> *Judgment against Barbara Fouche, personal representative of the estate of James Wilson Fouche, Jr., reversed and remanded for a new trial.*
>
> *Judgment against Noble Benjamin Ridings, Jr., affirmed; costs to be equally divided between appellant Ridings and appellee.*