Ursula **KEMPE** and Uda Kempe, her husband, Plaintiffs,

v.

The **DOMETIC CORPORATION,** A corporation of the State of Indiana, Defendant.

Civ. A. No. 93–404 MMS.

United States District Court, D. Delaware.

Oct. 21, 1994.

---

Bernard A. Van Ogtrop, of Cooch and Taylor, Wilmington, DE, for plaintiffs.

Kevin J. Connors, and Walter H. Swayze, III, of Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Roger D. Landon, of Murphy Welch & Spadaro, Wilmington, DE, for defendant.

*OPINION*

SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiffs Ursula and Udo Kempe have filed this diversity action alleging personal injury and property damage. Their complaint stems from an incident involving the refilling and lighting of an alcohol-fueled stove supplied by defendant The Dometic Corporation ("Dometic"). Plaintiffs aver that Dometic Corporation is strictly liable in tort for failure to warn as to the safe fueling and relighting procedure for the stove.

Dometic has moved for a pretrial ruling on the admissibility of results of a serum alcohol test performed on Ursula Kempe. The test was performed on plaintiff shortly after she was burned while using defendant's product aboard her sailboat. The serum alcohol assay was part of a battery of tests ordered upon her admission to the Regional Burn Center at the Francis Scott Key Hospital in Baltimore.

For the reasons that follow, the Court will permit defendant to present testimony concerning plaintiff's alcohol consumption, but will prohibit defendant from presenting any evidence at trial relating to plaintiff's serum alcohol test.

## II. FACTUAL BACKGROUND

On December 29, 1989, plaintiffs purchased an Origo 4000 Stove manufactured by Origo USA, a division of the defendant Dometic Corporation. Docket Item ("D.I.") 51. They bought the alcohol fueled stove for use in their sailboat's galley, where it was routinely used to prepare meals for approximately fifteen weekends per year for three years. D.I. 26 Exhibit ("Ex.") A.

On September 24, 1992, plaintiffs sailed to the Chester River near Queenstown, Maryland and tied their sailboat to a friend's larger boat to moor for the night. D.I. 26 Ex. A. At 5:00 p.m. they boarded the adjoining sailboat. While on her friend's boat, plaintiff Ursula Kempe consumed two vodka tonics. D.I. 62 Ex. A. Between 6:00 and 6:30 p.m., plaintiffs returned to their own boat for dinner. D.I. 62 Ex. A.

Plaintiff Ursula Kempe prepared a meal of stew in the sailboat's galley on the Origo 4000 alcohol stove. D.I. 58 Ex. A. She heated the stew on the stove without incident. At approximately 9:00 p.m. she attempted to use the stove to brew some tea. Prior to lighting the stove, plaintiff refilled one of its alcohol fuel canisters. D.I. 62 Ex. F. When she ignited the stove, an alcohol fire erupted, severely burning plaintiff and part of the sailboat's interior compartment. D.I. 1.

Ursula Kempe was taken to the adjoining boat where her friends, one of whom was a nurse, attended to her burns as the boat transported her to land. Plaintiff did not appear impaired or intoxicated; her breath did not smell of alcohol. D.I. 58 Ex. D, E, and F. Upon arrival ashore, paramedics treated her wounds and administered intravenous fluids to counteract shock. D.I. 58 Ex. B. Plaintiff was then airlifted to the Regional Burn Center at Francis Scott Key Hospital in Baltimore. D.I. 58 Ex. F. Toxicology tests performed on plaintiff's blood serum collected at approximately 11:00 p.m. revealed a serum alcohol level of 75mg/dl, equivalent to 0.075 percent. D.I. 62 Ex. B; D.I. 62 Ex. C.

Defendant has secured an academic expert in alcohol toxicology who opines that plaintiff's 11:00 p.m. serum alcohol level "suggests that she had consumed somewhat more than she indicated [i.e., 2 drinks] during the interval prior to the accident." D.I. 62 Ex. D. The expert's report also concluded that based on plaintiff's serum alcohol level, "it is scientifically reasonable" to consider the alcohol in her system at the time of the incident as impairing her faculties, thus resulting in the actions that started the fire. D.I. 62 Ex. D. Defendant's expert will testify that the 11:00 p.m. alcohol reading extrapolates to a level of 0.1 percent at the time of the accident, evidencing intoxication. D.I. 50.

Plaintiffs rejoin by citing deposition testimony by their expert, a Deputy Medical Examiner for the state of Delaware. He stated that plaintiff's severe burns caused a loss of plasma water from her blood, resulting in an increased concentration ("hemoconcentration") of any dissolved elements such as alcohol in her blood. D.I. 58 Ex. B. Plaintiffs argue that the serum alcohol reading is artificially elevated due to plaintiff's burns.

## III. DISCUSSION

■ Fed.R.Evid. 403 provides that all evidence, even if relevant, may be inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Blancha v. Raymark Industries,* 972 F.2d 507, 516 (3d Cir.1992). Whether or not evidence is so prejudicial as to substantially outweigh its probative value is within the sound discretion of the trial court. *Bruno v. W.B. Saunders Co.,* 882 F.2d 760, 767 (3d Cir.1989), *cert. denied, CBS Inc. v. Bruno,* 493 U.S. 1062, 110 S.Ct. 880, 107 L.Ed.2d 962 (1990).

■ In a diversity action, the Third Circuit applies state law to determine the admissibility of evidence concerning one's alcohol consumption. *Rovegno v. Geppert Bros., Inc.,* 677 F.2d 327 (3d Cir.1982). The parties in the instant suit have agreed that Maryland law will govern with respect to both liability and damages.[1] D.I. 45.

■ Maryland courts have consistently held it is the province of the jury to determine whether plaintiff was intoxicated, impaired, or under the influence of alcohol. *Singleton v. Roman,* 195 Md. 241, 72 A.2d 705, 707 (1950); *Tereshuk v. State,* 66 Md. App. 193, 503 A.2d 254, 256, *cert. denied,* 306

---

1. Defendant's Brief on its Motion asserts that "counsel has agreed that ... the substantive law of Delaware should control the determination" of the admissibility of the serum alcohol. D.I. 61 at 3. The Court is inclined to disagree. A federal district court must apply the law dictated by the conflict of laws rules prevailing in the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), *Carrick v. Zurich–American Ins. Co.,* 14 F.3d 907, 909 (3d Cir.1994). Delaware courts adhere to the Restatement of Conflicts (Second) §§ 6, 145, and 146, which direct the court to presumptively apply the law of the state where the injury occurred in a personal injury action unless some other state has a more "significant relationship" to the occurrence and the parties. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 47

(Del.1991). The Delaware Supreme Court recently held that in a tort action, the Restatement choice of law analysis also applies to the admissibility of evidence where, as here, the facts are of consequence to the determination of the action. *Turner v. Lipschultz,* 619 A.2d 912, 915 (Del. 1992).

Plaintiffs are both citizens of the state of Maryland; the incident around which this lawsuit revolves occurred in Maryland's navigable waters. Defendant is incorporated in Indiana and has its principal place of business in Florida. Purchase of the stove at a Delaware retailer is the only connection to the state of Delaware. Based on these facts, the Court concludes that Maryland has the most significant relationship to this occurrence and these parties.

Md. 119, 507 A.2d 631 (1986). The jury should be left free to form its own judgment from the proffered evidence of alcohol consumption. *See Singleton,* 72 A.2d at 707 (slight odor of alcohol on defendant's breath was properly admissible on the issue of whether defendant was under the influence of alcohol). Maryland law will therefore permit evidence that plaintiff drank two vodka tonics a few hours prior to her accident.

■ The admissibility of plaintiff's serum alcohol level, however, presents a thornier problem. Defendant contends that there is the requisite degree of toxicological certainty that plaintiff was impaired at the time of her accident, based on its expert's retrograde extrapolation of the 11:00 p.m. serum sample. Plaintiffs argue that the serum alcohol level is of dubious validity and therefore extrapolation by defendant's expert is speculative and prejudicial. In determining the admissibility of putatively prejudicial evidence, the test is whether the probative value of the evidence is substantially outweighed by the dangers of unfair prejudice. *Mitchell v. Montgomery County,* 88 Md.App. 542, 596 A.2d 93, 101 (1991).

Plaintiffs first contend that the extent and severity of burns suffered by Ursula Kempe produced an artificial elevation of the serum alcohol level. The severe burns and shock suffered by one who is burned cause a loss of water from the blood, which may result in an artificially elevated measurement of alcohol. Plaintiff's burns were extensive, very likely resulting in a decrease in the fluid component of her blood. The volume of plaintiff's fluid loss is not known, thus the degree to which the alcohol reading was affected, if at all, is not ascertainable.

Other factors undermine the validity of plaintiff's serum alcohol reading. Paramedics administered intravenous fluids to counteract her fluid loss, thus diluting her blood volume. This dilution may or may not have caused a decrease in the serum alcohol reading. *See* James F. Mosher, 2 *Liquor Liability Law* § 22.05 (Matthew Bender 1994) (dilution of alcohol in the blood by intravenous fluid is dependent on volume of fluid lost, as well as rate of equilibration of the administered fluid). The multifarious effects of injury and treatment on plaintiff's blood fluid dynamics have not been quantified. The consequent effect on plaintiff's serum alcohol is speculative at best.

Muddying the waters even further is the fact that the alcohol test was performed on serum and not whole blood. Serum has a higher percentage of water than whole blood, thus the percentage of alcohol in serum will be higher than what would have been found in a sample of whole blood. Mosher, *supra,* at § 22.04. The benchmark assay for determining intoxication in Maryland, as in most states, is performed on whole blood, not serum. *Id.* at § 22.02.

A numerical factor must be used to convert a serum blood alcohol reading to an equivalent blood alcohol level. *Id.* at § 22.04; Carol A. Roehrenbeck and Raymond R. Russell, *Blood is Thicker than Water,* 8 Crim.Just. 14 (Fall 1993). Usage of a statistical average conversion factor, such as 1.16:1, is arbitrary. *Id.* Conversion factors range from 1.10:1 to 1.35:1, depending on the fluid content of an individual's blood; the only accurate conversion factor is one calculated specifically for that person. *Id.* Thus, mathematical manipulation of plaintiff's alcohol reading is inherently flawed. Combining this mathematical uncertainty with the serum sample's questionable validity serves to confound the calculus even further.

■ Maryland's evidence and motor vehicle code sets forth statutory presumptions relating to intoxication and impairment at given levels of whole blood alcohol.[2] These presumptions are not relevant in the instant case: under Maryland law, a jury in a civil case may not apply the presumptions, there-

---

2. Under Maryland law, a whole blood alcohol reading of greater than 0.07 is prima facie evidence of impairment; 0.1 percent is prima facie evidence of intoxication. *Md.Cts. & Jud.Proc. Code Ann.* § 10–307. There is no statutory presumption if the whole blood reading is less than 0.07 percent, however, the test result may be considered with other competent evidence to determine a violation of state motor vehicle law. *Id.* There is no intoxication presumed if the whole blood alcohol reading is 0.05 percent or less. *Id.*

fore defendant Dometic may not rely on them. *Fouche v. Masters,* 47 Md.App. 11, 420 A.2d 1279, 1284 (1980). Expert testimony would be required for the jury to correlate the result of the serum alcohol test to the degree of possible impairment or intoxication. *Id.* Expert testimony would also be necessary on the issues of fluid loss and hemoconcentration from burn trauma and shock, hemodilution from intravenous fluid administration, and appropriate conversion factors for serum to blood alcohol equivalents.

There is no supplementary independent evidence that plaintiff was intoxicated or impaired. Adding this to all of the above considerations makes it sufficiently clear that the probative value of the serum alcohol is outweighed by its potential for unfair prejudice. *See Rovegno v. Geppert Bros., Inc.,* 677 F.2d 327, 331 (3d Cir.1982) (construing Pennsylvania law).

Admitting evidence of plaintiff's serum alcohol would necessitate a mini-trial on the issue of the validity, extrapolation, conversion and contextual meaning of plaintiff's serum alcohol level. Such conjectural evidence would be highly prejudicial to plaintiff and only serve to confuse and distract the jury from the pivotal issue in this case, *i.e.,* whether defendant is strictly liable in tort for failure to provide warnings regarding the use of its product.

## IV. CONCLUSION

 The issue for the jury to decide in this case is whether the defendant is liable under strict liability in tort for failure to warn plaintiff "as to how to prevent flashback when in use or in preparation for use." Amended Complaint, D.I. 31, ¶ 27. Defendant seeks to introduce evidence of an extrapolated serum alcohol reading. As explained above, the validity and accuracy of the extrapolated reading is clouded. Both sides would have to introduce experts, conceivably from varied disciplines, to litigate this collateral issue. The jury would be unavoidably distracted from the primary issue of failure to warn; the only possible relevance of the se-

rum alcohol test is to the defendant's assertion of product misuse.[3] In contradistinction, allowing evidence that plaintiff drank two cocktails would not confuse or distract the jury.

In my informed discretion, an extrapolated serum alcohol reading that is severely contested is not probative of the central issue in this case. The prejudice to plaintiff by introduction of this evidence substantially outweighs its probative value; defendant's motion to include this evidence will be denied.

---

**3.** Under Maryland law, contributory negligence is not a defense in an action of strict liability in tort. *Ellsworth v. Sherne Lingerie, Inc.,* 303 Md.

581, 495 A.2d 348, 356 (1985). Evidence of misuse, however, may serve to negate one or more essential elements of plaintiff's case. *Id.*