**Robert T. HULMES, Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc., Defendants.**

and

**HONDA MOTOR COMPANY, LTD., et al., Third Party Plaintiffs,**

v.

**Nicholas J. HULMES, Third Party Defendant.**

**Sherry HULMES, Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., et al., Defendants.**

and

**HONDA MOTOR COMPANY, LTD., et al., Third Party Plaintiffs,**

v.

**Nicholas J. HULMES, Third Party Defendant.**

**Civil Action No. 93–2771.**

United States District Court, D. New Jersey.

July 22, 1996.

Opinion Denying Certification for Appeal Aug. 12, 1996.

Lewis M. Levin, Joseph R. Viola, Lewis M. Levin & Associates, Philadelphia, PA, for Plaintiff, Robert T. Hulmes.

Jayne A. Piarulli, Michael A. Smerconish, Beasley, Casey & Erbstein, Philadelphia, PA, for Plaintiff, Sherry Hulmes.

Robert St.L. Goggin, Brian C. Dareff, Marshall, Dennehy, Warner, Coleman & Goggin, Marlton, N.J., for Defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc.

Paul G. Cereghini, Bowman & Brooke, Phoenix, AZ, for Defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc.

## OPINION

ORLOFSKY, District Judge:

Plaintiff, Robert T. Hulmes ("Hulmes," or the "plaintiff"), filed this product liability action against defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc. (collectively referred to as "Honda"). Plaintiff, Sherry Hulmes, Hulmes's former wife, has filed a *per quod* action which has been consolidated with Hulmes's action. Jurisdiction is based on diversity of citizenship and an amount in controversy in excess of $50,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332.

This opinion addresses one of forty-four (44) *in limine* motions filed by the parties. In this motion, plaintiff seeks an *in limine*

ruling barring evidence that he consumed alcohol prior to the accident which resulted in his catastrophic injury.

The issue presented for this court's resolution is whether evidence of the plaintiff's consumption of alcohol prior to the accident in which he was injured may be introduced at trial, in light of New Jersey's evidentiary rule barring such evidence unless it is accompanied by independent "supplementary evidence" that the plaintiff was unfit to drive at the time of the accident. Specifically, this court must decide a previously unresolved question of New Jersey law: whether evidence that the plaintiff's blood alcohol level at the time of the accident was at or above .10%, constitutes sufficient "supplementary evidence" of intoxication. Because I conclude that evidence of a .10% or higher blood alcohol level is sufficient "supplementary evidence" of the plaintiff's intoxication in this case, and that the danger of unfair prejudice does not substantially outweigh the probative value of this evidence, plaintiff's *in limine* motion will be denied.

## I. Facts and Procedural History

On July 28, 1991, Hulmes was severely injured as the result of a collision which occurred while he was riding a three-wheeled All–Terrain Vehicle ("ATV") designed and manufactured by Honda. Hulmes and his brother, Nicholas Hulmes, were riding their ATVs on the paved roadway of West Hunterdon Avenue in the City of Mantua, Gloucester County, New Jersey. There is some dispute as to how fast the ATVs were going at the time of the accident. Plaintiff's eyewitness testimony estimates their speed at about 17–20 m.p.h. *See* Dep. of Corey Thomas at 95. Defendants' accident reconstruction expert will testify that Hulmes's ATV was travelling at a speed of between 35–40 m.p.h. Report of David Mercaldi, Ph.D. at 8. It is undisputed that Hulmes's ATV came into contact with the ATV operated by his brother, although the force of this "collision" is an issue that is vigorously contested by the parties. Following the "collision," Hulmes's ATV rolled over, Hulmes was thrown from the vehicle, and both the vehicle and Hulmes came to rest some yards away. As a result of this accident, Hulmes suffered a spinal fracture at C3–C4 and spinal cord lesion, resulting in permanent quadriplegia.

Deborah Connelly, who lived nearby, heard the accident and went to the scene. Dep. of D. Connelly at 13, 19. Ms. Connelly testified that Nicholas Hulmes removed an unopened bottle of beer from the plaintiff's waistband shortly after the accident. *Id.* at 25–27. Ms. Connelly also testified that she did not smell alcohol on the plaintiff's breath, but, in view of the fact that the plaintiff was lying on the ground, she couldn't tell if the plaintiff was intoxicated. *Id.* at 39.

The Advanced Life Support Unit from Underwood Hospital arrived at the scene soon after the accident. Because Hulmes did not have a patent airway, the Advanced Life Support Unit paramedics inserted an endotracheal tube and ventilated Hulmes, using a bag and mask resuscitator. Dep. of C. McNulty at 98–99. Shortly thereafter, the trauma team from Cooper Hospital arrived by helicopter. The flight nurse, Catherine N. McNulty, R.N., testified that she continued ventilating Hulmes with the bag and mask resuscitator during transport to the trauma center, periodically suctioning from him an amber fluid that "smelled like alcohol." *Id.* at 105–108.

Plaintiff's brother, Nicholas Hulmes, testified at his deposition that neither he, nor his brother, had "consumed any alcoholic beverages" on the day of the accident. Dep. of N. Hulmes at 125. A member of the Sewell Fire Company Ambulance Squad and a witness at the scene, testified that Nicholas Hulmes was "belligerent" at the accident scene. Dep. of J. Neely at 24. Neely, however, also testified that he did not smell alcohol on Nicholas Hulmes's breath. *Id.* At oral argument, counsel represented that Hulmes himself had testified at his deposition that he could not remember whether he had consumed any alcoholic beverages prior to the accident.

## II. Discussion

The Third Circuit has noted that "*in limine* ruling on evidence issues is a procedure which should, in a trial court's discretion, be

used in appropriate cases." *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 260 (3d Cir.1983) (citing 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5037, at 193–99), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

No doubt in an abundance of caution, plaintiff's counsel has identified over 1400 trial exhibits in plaintiff's portion of the Joint Final Pretrial Order. In the hope of narrowing the issues and expediting the trial of this case, this court granted the parties leave to file appropriate motions *in limine*. The parties subsequently filed a total of forty-four (44) *in limine* motions. On July 2, 1996, following a full day of oral argument on July 1st, this court entered an order deciding, or deferring until trial, forty-one (41) of the *in limine* motions. This opinion and the accompanying order decide one of the three motions taken under advisement following oral argument.

### A. Plaintiffs' motion to exclude all references to alcohol consumption by Robert T. Hulmes.

Honda seeks to introduce evidence that the plaintiff was intoxicated at the time of the accident. Specifically, Honda proffers evidence of the presence of alcohol (ethanol) in Hulmes's blood, in an amount of 106.9 mg/dl, as determined by a blood serum test administered on a sample of Hulmes's blood drawn at Cooper Hospital approximately one hour after the accident. Cooper Hospital Pathology Report at 8. Defendants' toxicology expert will testify that this reading extrapolates to a Blood Alcohol Content ("BAC") in whole blood of .11% at the time of the accident. Report of G. John DiGregorio, M.D. at 2.[1] A second Honda expert witness opines that the "most likely value for [Hulmes's] blood alcohol concentration" was "slightly above .10%." Plaintiff strenuously contests the accuracy of these extrapolations.

Moreover, plaintiff contends that the results of blood alcohol tests, unless supported by independent corroborating evidence of intoxication, not present in this case, are inadmissible under New Jersey law because the potential prejudicial effect of such evidence substantially outweighs its probative value.

### B. The Prejudicial Effect of Evidence of Alcohol Consumption

█ The Third Circuit has held that, when confronted with the task of balancing the prejudicial effect of evidence of alcohol consumption with its probative value, a district court must look to state law to determine whether the prejudice to the party opposing the introduction of such evidence would be substantial. *Rovegno v. Geppert Bros., Inc.*, 677 F.2d 327, 329 (3rd Cir.1982) (relying upon *Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85, 89 (3d Cir.1976)).

*Rovegno* has proved to be a controversial decision. Judge Van Dusen, in a lengthy dissenting opinion, chastised the panel majority for its holding, declaring that *Greiner* may not so much have held, as assumed that the *Erie* Doctrine was applicable to a decision to admit evidence of drinking. *See id.* at 338 & n. 21 (Van Dusen, J., dissenting) (discussing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). There is an on-going and passionate debate about whether state law or federal law governs the admissibility of such evidence. Some authorities have suggested that the application of state law can be justified by simply rephrasing the question as one of the "materiality" under state law of evidence of alcohol consumption, rather than its probative value or prejudicial effect. *See* 5 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 1101[02] (Matthew Bender 1995); *see generally* 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5201, at 234 & n. 29 (1978 & Supp.1996) (noting that the Third Circuit, in *Rovegno*, applied state law, "[o]ver vigorous dissent and without discussion of the effect of Rules 401 and 402").

Other courts have concluded that the *Rovegno* majority discounted the rule of *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14

---

1. Dr. DiGregorio, in making the extrapolations in his report, assumes that Hulmes was in the "elimination phase" rather than in the "absorption phase" during the one hour interval between the accident and the blood test. Report of G. John DiGregorio, M.D. at 1–2.

L.Ed.2d 8 (1965), which held that federal law governed all "procedural" matters in federal courts, even in actions in which state law supplies the rule of decision. *See McInnis v. A.M.F., Inc.,* 765 F.2d 240, 245 n. 6 (1st Cir.1985) (specifically criticizing *Rovegno* ). The true difficulty, however, lies in "ascertain[ing] whether a particular rule [of state law] is 'only evidentiary or is meant to prescribe rights and obligations of the parties not related to fact-finding.' " Weinstein, *supra* (citing Wellborn, *The Federal Rules of Evidence and the Application of State Law in the Federal Courts,* 55 Tex.L.Rev. 371, 396 (1977)). *Cf. Gasperini v. Center for Humanities,* —— U.S. ——, ——, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996) ("Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor.").

Several Circuit Courts of Appeals have disagreed with *Rovegno,* holding that a determination of the possible prejudicial effect of the introduction of evidence of alcohol consumption is within the trial court's discretion under Rule 403 of the Federal Rules of Evidence, and is not controlled by state law. *See Romine v. Parman,* 831 F.2d 944 (10th Cir.1987) (relevancy and prejudice determinations are made under Fed.R.Evid. 403); *McInnis,* 765 F.2d at 244–45 (1st Cir.1985) (a panel, which included then-Judge Breyer, ruled that the Federal Rules of Evidence, and not state law, apply to a determination whether to admit evidence of intoxication); *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1153 (5th Cir.1981); *Levitt v. H.J. Jeffries, Inc.,* 517 F.2d 523, 525 (7th Cir.1975). Indeed, the *Rovegno* majority does not explain how the application of Fed.R.Evid. 403, rather than state law, could "rationally affect private ordering or encourage forum shopping." *McInnis,* 765 F.2d at 246 (citing *Erie* ). The weight of authority seems to support the conclusion reached in *McInnis,* that, in deciding whether to admit evidence of alcohol consumption, the application of

Fed.R.Evid. 403 by a federal court cannot violate the "twin aims" of *Erie. Hanna v. Plumer,* 380 U.S. at 468, 85 S.Ct. at 1142.

Honda devotes a significant portion of its brief in opposition to plaintiff's motion to a discussion of the controversy engendered by *Rovegno* to demonstrate that Honda would prevail on this evidentiary issue if I were to apply Fed.R.Evid. 403, rather than New Jersey law. *Rovegno,* however, bars me from taking that path.

In *Straley v. United States,* 887 F.Supp. 728, 732–39 (D.N.J.1995), a case brought under the Federal Tort Claims Act, in which, as in diversity cases, the rule of decision is supplied by state law, Judge Debevoise conducted a comprehensive analysis of the current state of the law in light of the debate over the *Rovegno* decision. Judge Debevoise finally concluded, as I do, that the Third Circuit meant what it said in *Rovegno,* and that, "on the question of alcohol consumption, [*Rovegno* ] requires the application of state law rules of admissibility." *Id.* at 737.

■ Happily, *Rovegno* itself points to one way out of the quagmire it has created. In its analysis of *Fisher v. Dye,* 386 Pa. 141, 125 A.2d 472, 476 (1956), the leading Pennsylvania decision interpreting the admissibility of evidence of alcohol consumption, the *Rovegno* majority concluded "that the Pennsylvania decision implicitly requires the same discretionary weighing required by Rule 403. Thus, in interpreting *Fisher v. Dye* and its progeny, we may draw on our own decisions dealing with review of Rule 403 exercises." *Rovegno,* 677 F.2d at 329. *Rovegno* 's invitation to district courts in this Circuit to inform the application of state law by reference to Rule 403, is reinforced by the happy coincidence that on July 1, 1993, New Jersey amended its rules of evidence, closely modeling its new rules on the Federal Rules of Evidence. Indeed, New Jersey's Rule of Evidence 403 closely parallels Fed.R.Evid. 403.[2] Accordingly, while *Rovegno* instructs

---

**2.** New Jersey's rule provides:
 Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of the issues, or misleading the jury

or (b) undue delay, waste of time, or needless presentation of cumulative evidence.
N.J.R.Evid. 403. The official comment to this rule explains that "Rule 403 contains the principles established by both N.J.Evid.R. 4 and Fed. R.Evid. 403. Although the formulation is closer

me to apply New Jersey law to decide this issue, I may also look to the decisions of federal courts applying Rule 403 in balancing the probative value of evidence of alcohol consumption against the potential prejudicial effect of such evidence.

### C. The "Balancing Test"

■ Under either New Jersey Evidence Rule 403 or its federal equivalent, a trial court may exclude otherwise relevant evidence "if its probative value is substantially outweighed" by the danger of unfair prejudice. Thus, as a threshold matter, I must decide whether the evidence of Hulmes's alcohol consumption is probative. Under either the New Jersey Evidence Rules or the Federal Rules of Evidence, relevant evidence is that which tends to prove or disprove any fact that is of consequence to the outcome of the action. Fed.R.Evid. 401; N.J.R.Evid. 401. Plaintiff, in this *in limine* motion, does not challenge the relevance of the evidence of Hulmes's alcohol consumption, but only the prejudicial effect of such evidence.

Nevertheless, the probity of the evidence of alcohol consumption bears analysis because, in a balancing test, evidence which is probative on two or more issues might arguably require a greater degree of prejudice before it could be said that the danger of unfair prejudice "substantially" outweighs the probative value of the evidence.

■ The plaintiff in a products liability case must demonstrate that the product was not misused, or that the misuse was foreseeable to the manufacturer. *Jurado v. Western Gear Works,* 131 N.J. 375, 619 A.2d 1312 (1993). In a case based upon a failure to warn, evidence of misuse might "include a showing that the plaintiff either disregarded an adequate warning or would have done so had the warning been given." *London v. Lederle Labs,* 290 N.J.Super. 318, 327, 675 A.2d 1133 (App.Div.1996) (citing *Coffman v. Keene Corp.,* 133 N.J. 581, 604, 628 A.2d 710 (1993), and *Calderon v. Machinenfabriek Bollegraaf Appingedam B.V.,* 285 N.J.Super. 623, 667 A.2d 1111 (App.Div.1995)). Thus,

evidence of Hulmes's consumption of alcohol is relevant to rebut the presumption that Hulmes's would have followed additional warnings had they been given. *See Coffman v. Keene Corp.,* 133 N.J. 581, 628 A.2d 710 (1993) (the plaintiff in a failure to warn case benefits from a rebuttable presumption that he or she would have followed an adequate warning had one been given).

Furthermore, evidence of misuse of a product "is relevant to the issue of proximate cause because it may establish that the plaintiff's conduct was the cause-in-fact of the injury." *Id.* (citing *Johansen v. Makita USA, Inc.,* 128 N.J. 86, 92, 607 A.2d 637 (1992)). Evidence of Hulmes's alcohol consumption is also relevant, therefore, to the issue of proximate cause. In some cases, the plaintiff's conduct may be so remotely related to the accident, if it is related at all, that whether the plaintiff had consumed alcohol prior to the accident is of little probative value on the issue of causation. *See, e.g., Lewis v. Horace Mann Ins. Co.,* 442 So.2d 526 (La.Ct.App.1983) (overturning finding that alcohol was a substantial contributing cause when the plaintiff testified that the defendant was not using his turn signal and was within 20 or 30 feet when he suddenly turned into the plaintiff). By contrast, in this case, both parties agree that the accident was precipitated by the contact between plaintiff's Honda ATC250R and the ATV driven by his brother, while the plaintiff was attempting to "pass" his brother's ATV.

■ The leading New Jersey case on the admissibility of evidence of alcohol consumption by a party prior to an accident in which that party is involved is *Gustavson v. Gaynor,* 206 N.J.Super. 540, 503 A.2d 340 (App. Div.1985). In *Gustavson,* the defendant admitted to having had "two or three bottles of beer" some five to six hours before the accident. *Id.* at 543, 503 A.2d 340. There was no blood test available and no eyewitness testimony corroborating the defendant's intoxication. The *Gustavson* court held that:

to the federal rule than the 1967 New Jersey rule, the intention was to retain the principles of N.J.Evid.R. 4 as construed by New Jersey

courts." N.J.R.Evid. 403 cmt. (citations omitted).

The mere fact that a driver had consumed some alcoholic beverages is by itself insufficient to warrant an inference that the driver was intoxicated and that the intoxication was of such a degree as to render him unfit to drive at the time of the accident. The admission of such evidence without supporting evidence is unduly prejudicial in view of its capacity to inflame the jury.

*Id.* at 545, 503 A.2d 340.

Other "supplementary evidence from which the [jury] ... may reasonably conclude that the drinking affected the safe operation of the vehicle" includes, without limitation, "excessive drinking, driving at an excessive speed, recklessness or erratic driving, drunken behavior at the accident scene, or similar acts suggestive of an unfitness to drive." *Gustavson,* 206 N.J.Super at 544–45, 503 A.2d 340 (citing *Rovegno,* 677 F.2d at 330–31); *cf. Straley,* 887 F.Supp. at 737 (citations omitted).

The rule announced in *Gustavson* has also been applied in *Guzzi v. Clarke,* 252 N.J.Super. 361, 599 A.2d 956 (L.Div.1991), and in opinions of the United States District Court for the District of New Jersey in *Clement v. Consolidated Rail Corp.,* 130 F.R.D. 530 (Wolfson, M.J.), *aff'd,* NO. CIV. 88–3793, 1990 WL 49978 (D.N.J. April 17, 1990) (Fisher, J.). The *Gustavson* rule, like the Pennsylvania rule of *Fisher v. Dye,* and similar rules in other states, is designed to exclude potentially prejudicial evidence unless that evidence reliably supports a conclusion that the party against whom it will be introduced was "unfit to drive" at the time of the accident. *See Clement,* 130 F.R.D. at 537.

In *Guzzi,* the Law Division admitted expert testimony analyzing the probable results of combining a relatively small amount of alcohol with a prescription medication. The facts of *Guzzi,* which involved expert testimony on the effects of mixing alcohol and a prescription medicine, distinguish it from

other decisions weighing the probative value of evidence of alcohol consumption against its prejudicial effect. *Guzzi,* therefore, is not dispositive of the issue presented in this case. Nevertheless, it is instructive that the *Guzzi* court admitted evidence of intoxication, despite the absence of testimony of "excessive drinking, driving at an excessive speed, recklessness or erratic driving [or] drunken behavior at the scene." *Guzzi,* 252 N.J.Super. at 366, 599 A.2d 956. Significantly, the court concluded that the list of "supplementary evidence of intoxication," set forth above, was not exhaustive. The court in *Guzzi* found the evidence of intoxication "highly probative" of why the defendant did not react more quickly with a "550–foot clear line of vision." *Id.* At oral argument on this motion, counsel for Honda produced photographs, exchanged by the parties during discovery in this case, showing that West Hunterdon Avenue was dry and the weather clear at or about the time of Hulmes's accident.

In *Clement,* Magistrate Judge Wolfson excluded evidence of alcohol consumption based upon a finding that a blood alcohol content of .051%, without any other "supplementary evidence," did not meet the *Gustavson* standard. *Clement,* 130 F.R.D. at 535. Magistrate Judge Wolfson's decision was affirmed, in part, on the basis of New Jersey's Motor Vehicle Law then in effect, under which blood alcohol levels ranging between .05% and .09%, instead of giving rise to a statutory presumption of intoxication, constituted only one type of "competent evidence to be used in determining the guilt or innocence of the defendant." *Clement v. Consolidated Rail Corp.,* NO. CIV. 88–3793, 1990 WL 49978 *2 (D.N.J. April 17, 1990) (citing N.J.S.A. § 39:4–50.1 (repealed)).

It is not clear, however, what effect the current New Jersey Motor Vehicle Code's irrebuttable presumption of unfitness to drive with a BAC of .10% or higher has upon the admissibility of such evidence in a civil case.[3]

---

**3.** N.J.S.A. § 39:4–50, in pertinent part, provides criminal penalties for:

A person who operates a motor vehicle while under the influence of intoxicating liquor, ... or operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight

of alcohol in the defendant's blood or permits another person who is under the influence of intoxicating liquor, ... to operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of

Unlike some states, New Jersey does not specifically limit the use of evidence of a probable violation of section 39:4–50 of its Motor Vehicle Code to criminal trials. *See* 1 James F. Mosher, *Liquor Liability Law* § 14.02[2] (Matthew Bender 1995) (identifying Arkansas, Connecticut, Kentucky, Minnesota and Louisiana as states that prohibit the use of the statutory presumption of intoxication in civil cases, and Arizona, Florida, Georgia, Montana, Oregon, Vermont and Washington as states in which the statute specifically provides for a rebuttable presumption of intoxication in civil cases based on the statutory blood alcohol level).

In *Straley v. United States,* Judge Debevoise excluded evidence of the plaintiff's blood alcohol level, which was, by one calculation, as high as .12% at the time of the accident. Judge Debevoise noted that there was eyewitness testimony that Straley did *not* appear to be intoxicated at the time of the accident and no "on-the-scene evidence that Straley was actually impaired." *Straley,* 887 F.Supp. at 739.

In *Straley,* however, even the defense experts agreed that the .147 serum blood alcohol level taken at the hospital was probably an artificially high reading, due to Straley's considerable loss of blood following the accident. More importantly, all the experts in *Straley* apparently agreed that "it was likely Straley's blood alcohol was below .10% at the time of the accident." *Id.*

In this case, Hulmes's blood alcohol level can be determined only by extrapolation from the serum test performed at Cooper Hospital upon his admission. Honda's toxicology expert opines that Hulmes's BAC at the time of the accident would have been .11%. In his brief in opposition, plaintiff attaches a letter from Dr. William L. Mannion, which contests the findings of defendants' experts.[4] Dr. Mannion opines that plaintiff's blood alcohol "could have been significantly below the .10% level of legal intoxi-

cation at the time of the accident." Hulmes's Brief. exhibit C at 2. Finally, however, Dr. Mannion suggests only that the extrapolations made by the defendants' experts could be in error by plus or minus ten percent. This conclusion, however, does not cast significant doubt on the evidence that Hulmes's BAC was at or above the .10% level which constitutes a *per se* violation of N.J.S.A. § 39:4–50. Any doubt raised by Dr. Mannion's opinion goes to the weight of the testimony of the defendants' experts, rather than to its admissibility. At least one other court which has considered this issue has reached the same conclusion.

Interpreting an Illinois rule similar to the *Gustavson* rule, the court in *Cuellar v. Hout,* 168 Ill.App.3d 416, 118 Ill.Dec. 867, 522 N.E.2d 322 (1988), admitted disputed expert opinion testimony that the plaintiff's BAC was .104 at the time of the accident, holding that the expert opinion itself was "supporting evidence which 'either directly or by reasonable inference, [shows] that the conduct of [plaintiff] at and before the accident was or may have been affected by the use of alcoholic beverages.'" *Id.* 118 Ill.Dec. at 872, 522 N.E.2d at 327 (citations omitted). The *Cuellar* court, addressing facts similar to those before this court, concluded that the plaintiff's attacks on the methodology of the expert's extrapolation went to the weight, and not the admissibility of such testimony. *Id.* at 871, 522 N.E.2d at 326.

The question whether a BAC of .10% or higher may, in and of itself, constitute *Gustavson*-type "supplementary evidence" of intoxication is unsettled in New Jersey. In *Clement,* Magistrate Judge Wolfson declared her unwillingness "to infer that one is unfit to drive based solely on one's blood alcohol level—even when that level is extremely high." *Clement,* 130 F.R.D. at 535. Clement's BAC, however, was only .051%. More importantly, the view taken by Magistrate Judge Wolfson ignores the fact that a BAC of .10% or higher is, without more, irrebuta-

---

0.10% or more by weight of alcohol in the defendant's blood....

4. Dr. Mannion's letter is dated May 27, 1996. Defendants correctly point out that Dr. Mannion has not been identified as an expert in the pre-

trial order. Honda's Brief at 14 n. 1. Therefore, Honda contends that this letter is hearsay which "should not be considered by this court." *Id.* On the contrary, Fed.R.Evid. 104(a) permits the court to consider otherwise inadmissible evidence in deciding a question of admissibility.

ble evidence of unfitness to drive.[5] In *Straley,* on the other hand, Judge Debevoise opined that "a clear showing that Straley's blood alcohol content at the time of the accident was above the .10% standard for legal intoxication might satisfy *Gustavson's* corroboration requirement." *Straley,* 887 F.Supp. at 739. Notably, Straley was riding upon, but not driving, a vehicle at the time he was injured. Arguably, the application of a statutory presumption of unfitness to operate a vehicle is somewhat less compelling in a civil case when the allegedly intoxicated plaintiff was not driving.[6] In this case, Hulmes was driving a motor vehicle within the meaning on the New Jersey Motor Vehicle Code.[7] *Cf. Locke v. Claypool,* 426 Pa.Super. 528, 627 A.2d 801, 803 (1993) (holding that statutory standards of intoxication apply equally to drivers of automobiles and to bicyclists, because, a bicycle is a "vehicle" under the Pennsylvania Motor Vehicle Code, which proscribes driving "vehicles" while under the influence of alcohol).

The question left unanswered in *Straley* and *Clement* is precisely the one confronting this court on this motion *in limine.* Can evidence of a blood alcohol content of .10%, or higher, with little or no additional corroborative evidence of intoxication, satisfy the *Gustavson* requirement for other "supporting evidence" of unfitness to drive?

Courts grappling with similar evidentiary rules in other states have come to inconsistent conclusions. For example, in *Smith v. Deere & Co.,* CIV. A. No. 87–7998, 1989 WL 24903 (E.D.Pa. March 17, 1989), a suit against the product manufacturer, the court admitted evidence of a BAC of .1483%, which was accompanied only by the plaintiff's admission that he had been drinking prior to the accident, as evidence of unfitness to drive a snowmobile. It is unclear, however, whether the court in *Smith* applied Fed.R.Evid. 403, or Pennsylvania law.

In *Kempe v. Dometic Corp.,* 866 F.Supp. 817 (D.Del.1994), the court excluded evidence of plaintiff's blood alcohol level in a products liability suit. After discussing the difficulty of establishing the alcohol content of whole blood by extrapolation from a serum level, the court concluded that "the probative value of the serum alcohol is outweighed by its potential for unfair prejudice." *Id.* at 821 (citing *Rovegno,* 677 F.2d at 331). Curiously, however, the court admitted evidence that the plaintiff drank two cocktails prior to the accident because it concluded that such evidence "would not confuse or distract the jury." *Id.* Ultimately, it is unclear whether *Kempe* was decided on the basis of a Maryland rule of law which operates to exclude unsupported evidence of intoxication because of its prejudicial effect, or because the evidence was thought to be too "confusing" or because it might "mislead" the jury.

There is little "supplementary evidence" in this case of Hulmes's unfitness to drive. Applying *Gustavson,* this court must decide which, if any, of the following proffered evidence, provides support for the admission of evidence intended to show that Hulmes's consumed alcoholic beverages prior to the accident:

---

5. In *Clement,* Magistrate Judge Wolfson cites *Billow v. Farmers Trust Company,* 438 Pa. 514, 266 A.2d 92 (1970), noting that the Pennsylvania Supreme Court refused to find that a blood alcohol content of .14% implied impairment. In the same paragraph, however, Magistrate Judge Wolfson concedes that since Pennsylvania adopted its .10% statutory presumption of intoxication, the courts of the Commonwealth had been "giving greater consideration to admitting evidence of substantially elevated blood alcohol levels (levels in excess of .10 percent) on the question of unfitness to drive." *Clement,* 130 F.R.D. at 535 n. 8 (citing cases).

6. In *Straley,* Judge Debevoise also barred evidence of drinking by the driver of the truck on which Straley was riding at the time of the accident. The driver's BAC, however, was not alleged to have been higher than .08% at the time of the accident. In barring evidence of alcohol use by the driver, Judge Debevoise again stated that "if [the driver] had tested above .10% blood alcohol content, that evidence might be sufficient under *Gustavson* to corroborate actual impairment and justify the introduction of evidence of his prior consumption of alcohol." *Straley,* 887 F.Supp. at 740.

7. A "motor vehicle" is defined to include "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." N.J.S.A. § 39:1–1.

1. Expert testimony that Hulmes's ATV was traveling at 35–40 m.p.h. at the time of the accident;

2. Testimony from the flight nurse that she suctioned an "amber liquid that smelled like alcohol" out of Hulmes's stomach shortly after the accident;

3. Testimony that Nicholas Hulmes, Hulmes's brother, who had been with him all morning, was belligerent immediately following the accident;

4. Testimony that Hulmes had an unopened bottle of beer in his pants immediately following the accident;

5. Photographic evidence that the road was clear, flat and dry, and the weather clear at or about the time of the accident; and,

None of these facts, standing alone, would establish Hulmes's unfitness to drive, within the meaning of *Gustavson.* For example, while the presence of an "amber liquid that smelled like alcohol" in Hulmes's stomach is relevant to whether Hulmes had consumed alcoholic beverages, it is not, by itself, evidence of impaired ability to drive. Similarly, the presence of an unopened beer bottle in the waistband of plaintiff's pants is evidence that Hulmes had the opportunity to drink beer, but not evidence that he was intoxicated. Finally, the alleged belligerence of plaintiff's brother is completely irrelevant to Hulmes's ability to drive.

Nevertheless, the types of "supporting evidence" most often discussed in the caselaw include some of the evidence available in this case. There was a smell of alcohol, if not exactly on Hulmes's breath, at least emanating from the contents of his stomach. Here, as in *Cuellar,* 118 Ill.Dec. at 868, 522 N.E.2d at 323, there is disputed testimony that the plaintiff was travelling at an excessive speed at the time of the accident. Here, as in *Guzzi,* 252 N.J.Super at 366, 599 A.2d 956, there is a notable absence of environmental factors which might otherwise explain the collision of the two ATVs. Finally, there is the testimony of Honda's toxicology expert that Hulmes's BAC at the time of the accident was over .10%.

Furthermore, many of the traditional indicia of intoxication, for example, slurred speech and difficulty in walking, are unavailable due to the peculiar and tragic facts of this case. There is no eyewitness testimony of Hulmes's physical and mental condition immediately prior to the accident, except that of his brother, who has testified that neither Hulmes, nor he, consumed alcohol on the day of the accident. The credibility of Nicholas Hulmes, however, must be determined by the jury, and not by this court. Nevertheless, the fact that Nicholas Hulmes was apparently the only person to have been with the plaintiff immediately prior to the accident, highlights one of the difficulties of producing "supplementary evidence" of intoxication under the factual circumstances of this case.

Upon their arrival on the accident scene, paramedics quickly intubated Hulmes with an endotracheal tube and ventilated him with a bag and mask resuscitator until they were relieved by the helicopter evacuation team. Throughout this time, Hulmes was immobilized on a back board. Under these circumstances, the smell of Hulmes's breath, the fluidity of his speech and his physical coordination could not be observed.

In sum, the severity of Hulmes's injuries has created an understandable absence of the typical "supplementary evidence" of intoxication which might otherwise be expected from eyewitnesses at the scene. Other types of "supplementary evidence," however, are available, including the speed of the ATVs and the apparent absence of adverse road or weather conditions. In light of this "supplementary evidence," and, most importantly, the conclusions of two defense experts regarding the plaintiff's BAC at the time of the accident, I conclude, applying New Jersey law, that the evidence of Hulmes's consumption of alcohol on the day of the accident is admissible. The potential for undue prejudice resulting from the admission of the blood alcohol test results does not substantially outweigh the probative value of this evidence.

Accordingly, I answer the question left open by Judge Debevoise in *Straley* by predicting that the New Jersey Supreme Court would admit evidence of a blood alcohol con-

tent of .10% or higher as independent "supplementary evidence" of unfitness to drive under the *Gustavson* test.[8] This conclusion is bolstered by the irrebutable presumption contained in N.J.S.A. § 39:4–50. Under New Jersey's statutory scheme, a blood alcohol content of .10% or higher, serves as a sufficient substitute, in and of itself, for other direct evidence of intoxication. *Compare State v. Morris,* 262 N.J.Super. 413, 621 A.2d 74 (App.Div.1993) (evidence was sufficient without a blood test to show that defendant was "under the influence" when defendant's speech was slurred, he was loud and abrasive; he appeared disheveled, his eyes were red and bloodshot, and there was a strong odor of alcohol on his breath), *with State v. Oriole,* 243 N.J.Super. 688, 581 A.2d 142 (L.Div.1990) (a defendant whose BAC is .10% or higher may be convicted without any showing that he or she was driving in a reckless manner).

### III. Authentication of the Blood Alcohol Test Results

 Plaintiff further contends that even if the evidence of intoxication is otherwise admissible, it should be excluded because Honda cannot establish a proper chain of custody for the blood sample. Honda responds that any doubt as to the chain of custody of the Hulmes blood sample goes to the weight, rather than the admissibility, of this evidence.

Plaintiff asserts that Honda cannot properly authenticate the blood alcohol test results from Cooper Hospital under Fed.R.Evid. 901(a), which requires, "as a condition precedent to admissibility[,] . . . a finding that the matter in question is what its proponent claims." The Third Circuit has noted that, under Rule 901:

> 'the showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will

ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.'

*United States v. McGlory,* 968 F.2d 309, 328–29 (3d Cir.1992) (quoting *Link v. Mercedes–Benz of North America,* 788 F.2d 918, 928 (3d Cir.1986), in turn quoting *United States v. Goichman,* 547 F.2d 778, 784 (3d Cir. 1976)). The threshold determination which this court must make, therefore, is one of "conditional relevance under [Fed.R.Evid.] 104(b)—subject to the jury's ultimate determination of genuineness." 5 Weinstein et al., *supra* ¶ 901(a)[01], at 901–19.

Depositions have been taken of those persons who are routinely involved in the collection, testing, and analysis of blood samples taken at Cooper Hospital. Barbara L. Snyder, who was a senior technologist in the Cooper Hospital chemistry laboratory at the relevant time, testified extensively as to the procedures followed in testing blood samples at Cooper. Dep. of B. Snyder at 23–44. Ms. Snyder testified as to the procedures followed in the hospital's trauma unit in collecting and labeling blood samples. *Id.* at 23–24. Prepared packages available to personnel in the trauma unit contain, among other things, pre-numbered vials for blood samples and an identity band having the same number, which will be worn by the patient. *Id.* This attention to careful preparation renders it unlikely that blood samples of patients will be confused. "The proponent of evidence 'need not rule out every conceivable chance that somehow the identity or character of the evidence under went change.'" *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1155 (5th Cir.1981) (quoting *United States v. Lane,* 591 F.2d 961, 962 (D.C.Cir.1979)).

Plaintiff attaches significance to the fact that Ms. Snyder was unable to say at what precise time the ethanol test was run on Hulmes's blood sample. Dep. of B. Snyder at 103. Apparently, the records noting the exact time the test was conducted, along with the quality control records for the test equipment, no longer existed at the time of Ms.

---

**8.** Although I reach this conclusion by applying New Jersey's evidentiary law in accordance with *Rovegno,* I would reach the same result were I to apply Fed.R.Evid. 403.

Snyder's deposition as a result of Cooper Hospital's routine document retention procedures. Nevertheless, Ms. Snyder testified that it was Cooper Hospital's policy that blood tests were run within one hour of receiving the blood sample. *Id.*

I find that the chain of custody of plaintiff's blood sample meets the evidentiary threshold of reliability set forth in *Goichman,* and that a reasonable juror could infer that the blood alcohol test results are authentic.[9] Naturally, the strength of the chain of custody can be tested on cross-examination and the jury will ultimately decide the authenticity, as well as the probative value of this evidence.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion to exclude all references to alcohol consumption by Robert T. Hulmes will be denied. The court will enter an appropriate order.

### ORDER

This matter having come before the Court on July 1, 1996, on plaintiff's motion *in limine* to exclude all references to alcohol consumption by Robert T. Hulmes, Lewis M. Levin, Esq., and Robert Murphy, Esq., of Lewis M. Levin & Associates, appearing on behalf of the plaintiff, Robert T. Hulmes, and Robert St.L. Goggin, Esq., and Brian C. Dareff, Esq., of Marshall, Dennehy, Warner, Coleman & Goggin, and Paul G. Cereghini, Esq., of Bowman & Brooke, appearing on behalf of the defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc.; and,

The Court having considered the briefs, deposition testimony and exhibits filed in support of and in opposition to this motion,

as well as the oral argument of counsel, for the reasons set forth in this Court's OPINION, filed concurrently with this ORDER;

It is on this 22nd day of July, 1996, ORDERED that plaintiffs' motion *in limine* to exclude all references to alcohol consumption by Robert T. Hulmes is DENIED.

### OPINION ON MOTION TO CERTIFY

Plaintiff, Robert T. Hulmes ("Hulmes," or the "plaintiff"), filed this product liability action against defendants, Honda Motor Company, Ltd., Honda Research and Development Group, Ltd., Honda R & D North America, Inc., and American Honda Motor Company, Inc. (collectively referred to as "Honda"). Plaintiff has filed a motion requesting certification under 28 U.S.C. § 1292(b) of this court's Order, filed on July 22, 1996 (the "Order"), denying plaintiff's motion *in limine* seeking to bar evidence of Hulmes's alcohol consumption immediately prior to the tragic accident which gives rise to this case. Plaintiff has also applied to this court for a stay under § 1292(b). Because this court is not of the opinion that an interlocutory appeal of the Order in question is appropriate, certification and a stay will both be denied.

## I. Interlocutory Appeal Under Section 1292(b)

Section 1292(b) provides for immediate appeal of interlocutory decisions of the district court under the following circumstances:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

---

**9.** Although I am convinced that the "chain of custody" in this case is sufficiently reliable to permit the introduction of the results of Hulmes's blood test, it is noteworthy that some courts have ruled that blood tests conducted as a routine matter in a hospital are admissible under Fed. R.Evid. 803(6), which does not require the proponent to establish a "chain of custody." *See Stroud v. Roper Corp.*, No. 88 Civ. 1093(KMW),

1990 WL 115610 *3 (S.D.N.Y. Aug. 9, 1990) (holding that, absent specific evidence of error in the blood testing procedure, hospital records benefit from a presumption of trustworthiness); *Pieters v. B–Right Trucking, Inc.,* 669 F.Supp. 1463, 1465–66 (N.D.Ind.1987) (holding that Fed. R.Evid. 803(6) "does not impose an additional requirement that chain of custody be demonstrated").

termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

Interlocutory appeal under § 1292(b) is "used sparingly in exceptional" cases. 16 Charles A. Wright, et al., Federal Practice and Procedure, § 3929, at 134 (1977). An appeal under this section is an exception to the important policy of avoiding "piecemeal appellate review of trial court decisions which do not terminate the litigation." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982).

In order to merit interlocutory review, a movant must point to: (1) a controlling question of law, (2) about which there is substantial ground for difference of opinion, the immediate resolution of which by the appeals court will (3) materially advance the ultimate termination of the litigation. In evaluating these factors, "the court must remember that ... [a] motion should not be granted merely because a party disagrees with the ruling of the district judge." *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa.1983); *see also United States v. Grand Trunk Western R.R.*, 95 F.R.D. 463, 471 (W.D.Mich.1981) (denying certification because the moving party "merely questions the correctness" of the court's ruling).

A question is "controlling" if its incorrect disposition would require reversal of the final judgment. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974). It is clear that this court's Order, if held to be error on plaintiff's appeal from an adverse verdict, would probably require a new trial. Nevertheless, a "controlling" question under § 1292(b) must also be a question "of law," and it must be a question about which there is "substantial ground for difference of opinion."

A party's disagreement with the district court's ruling does not constitute a "substantial ground for difference of opinion" within the meaning of § 1292(b). Rather, the difference of opinion must arise out of genuine doubt as to the correct legal standard. Indeed, one court in this Circuit refused to certify a previously undecided issue of law because it found the statutory language to be clear, even in the face of a squarely contradictory ruling on the same issue from another district court. *See Singh v. Daimler–Benz, AG*, 800 F.Supp. 260 (E.D.Pa.1992) (holding that the amendment to the diversity jurisdiction statute which defined a permanent resident alien as a citizen for diversity purposes gave the federal court subject matter jurisdiction over a case brought by a permanent resident alien against a nonresident alien).

Furthermore, Judge Newcomer explained that an interlocutory appeal in *Singh* would only materially advance the ultimate termination of the litigation "if the Third Circuit concludes that this court does not have jurisdiction over this case, [but] if the Third Circuit finds that this court does in fact have jurisdiction, the litigation will not be advanced, but will instead will be considerably delayed." *Id.* at 263. Judge Newcomer was prescient in focusing on the risk of unnecessary delay. On appeal from the final judgment in *Singh*, the Third Circuit affirmed the district court, holding that the diversity jurisdiction statute, as amended, gives federal courts subject matter jurisdiction over cases brought by permanent resident aliens against alien defendants. *Singh v. Daimler–Benz AG*, 9 F.3d 303 (3d Cir.1993).

## II. Discussion

### A. A Controlling Question of Law

It is perhaps an all too common failing among attorneys that, under the guise of zealously discharging their professional duties to their clients, they claim the prerogative of Humpty–Dumpty, who said: "When I use a word, ... it means just what I choose it to mean—neither more nor less." Lewis

Carroll, *Through the Looking–Glass and What Alice Found There* 163 (Norton ed. 1971). Plaintiff's counsel, in this instance, however, has surpassed Humpty–Dumpty, because for plaintiff's counsel, when the court uses a word, it means just what plaintiff's counsel chooses it to mean, and nothing else.

In an attempt to obtain immediate appellate review of this court's Order, plaintiff's counsel has manufactured a "controlling question of law" out of whole cloth. Plaintiff's true purpose is transparently evident in the manner in which counsel has phrased what he contends to be the "controlling question of law" in this case as to which there is "substantial ground for difference of opinion." Plaintiff's counsel asks this court to certify the following question:

> Whether the Court in this diversity case erred by failing to apply either the holding of the "leading" New Jersey appellate decision, *Gustavson*, which requires the use of an "unfitness to drive" test in determining the admissibility of alcohol evidence, and the holding of *Rovegno*, which expressly mandated the use of a state's "unfitness to drive" test in diversity cases; and by instead adopting a relaxed standard based on Rule 403, Fed.R.Evid., through which the Court admitted evidence of plaintiff's alcohol use based solely on defendant's expert testimony of .10% or .11% BAC.

Plaintiff's Notice of Motion at 2–3 (citations omitted). The obvious problem with this statement of the question to be certified is that, in reaching its decision, this court applied New Jersey's "unfitness to drive" standard, as articulated in *Gustavson v. Gaynor*, 206 N.J.Super. 540, 503 A.2d 340 (App.Div. 1985), *certif. denied*, 103 N.J. 476, 511 A.2d 655 (1986), and, thereby, fully complied with the Third Circuit's mandate in *Rovegno v. Geppert Bros., Inc.*, 677 F.2d 327, 329 (3rd Cir.1982).

Plaintiff's suggestion to the contrary is wholly unsupported by this court's Opinion of July 22, 1996, which described and relied upon the holdings of *Gustavson; Guzzi v. Clarke*, 252 N.J.Super. 361, 599 A.2d 956 (L.Div.1991); *Clement v. Consolidated Rail Corp.*, 130 F.R.D. 530 (Wolfson, M.J.), *aff'd*,

NO. CIV. 88–3793, 1990 WL 49978 (D.N.J. April 17, 1990) (Fisher, J.); and *Straley v. United States*, 887 F.Supp. 728, 732–39 (D.N.J.1995). Indeed, *Straley* is the most recent published discussion of New Jersey's "unfitness to drive" rule. Opinion filed July 22, 1996, at 201–203. This court agreed with Judge Debevoise "that the Third Circuit meant what it said in *Rovegno*, and that, 'on the question of alcohol consumption, [*Rovegno*] requires the application of state law rules of admissibility.'" *Id.* at 200 (quoting *Straley*, 887 F.Supp. at 737).

This court cited, as persuasive authority, one other state appellate case applying a similar "unfitness to drive" standard. *Cuellar v. Hout*, 168 Ill.App.3d 416, 118 Ill.Dec. 867, 522 N.E.2d 322, *appeal denied*, 122 Ill.2d 572, 125 Ill.Dec. 214, 530 N.E.2d 242 (1988). Op. at 200, 205. This court also discussed, without relying upon them, other cases decided within this Circuit. *Smith v. Deere & Co.*, CIV. A. No. 87–7998, 1989 WL 24903 (E.D.Pa. March 17, 1989); *Kempe v. Dometic Corp.*, 866 F.Supp. 817 (D.Del.1994). Op. at 204–205. Finally, having applied New Jersey's "unfitness to drive" standard to the facts of this case, this court concluded in a footnote: "Although I reach this conclusion by applying New Jersey's evidentiary law in accordance with *Rovegno*, I would reach the same result were I to apply Fed.R.Evid. 403." Op. at 206, n. 8.

It is fair to say that this court, in its Opinion, criticized the Third Circuit's decision in *Rovegno*, as have other Circuits and commentators. *See* Op. at 199–200. It cannot be said fairly that this court did not follow *Rovegno*. This, however, is precisely what plaintiff contends. Indeed, Plaintiff has asked this court to certify for interlocutory appeal a question that it did not decide.

Plaintiff bases his contention that this court applied Fed.R.Evid. 403, instead of New Jersey law, on the following reference: "while *Rovegno* instructs me to apply New Jersey law to decide this issue, I may also look to the decisions of federal courts applying Rule 403 in balancing the probative value of evidence of alcohol consumption against the potential prejudicial effect of such evi-

dence." Op. at 200–201. This conclusion was not suggested, as plaintiff argues, by the Third Circuit's observation that "in interpreting [Pennsylvania's 'unfitness to drive' rule] we may draw on our own decisions dealing with review of rule 403 exercises," but rather by the Third Circuit's recognition, in the previous sentence, that Pennsylvania law "implicitly requires the same discretionary weighing required by Rule 403." *Rovegno*, 677 F.2d at 329. This court merely noted, therefore, that New Jersey "explicitly" requires the same kind of balancing, insofar as it has adopted the language of the Federal Rules of Evidence in N.J.R.Evid. 403. *See* Op. at 200. This was nothing more than an observation about the similarity in the type of discretionary balancing required by the federal rules and by state law. It was demonstrably not a choice by this court to apply the federal rule instead of New Jersey decisional law. It is one thing to note the similarity of the balancing test under either the state or federal rules, it is quite another thing to reject the state case law that determines the outcome of that test. In context, it is clear that this court applied New Jersey law.

Plaintiff's counsel does not, because he cannot, point to any case relied upon by this court in its Opinion applying Fed.R.Evid. 403 *instead* of the relevant state's "unfitness to drive" test. For example, in discussing the *Rovegno* decision, and particularly that decision's reception outside the Third Circuit, this court cited *McInnis v. A.M.F., Inc.*, 765 F.2d 240 (1st Cir.1985). However, this court nowhere relied upon *McInnis* in deciding the issue of the admissibility of the evidence of plaintiff's alcohol consumption in this case.

### B. Substantial Ground for Difference of Opinion

Plaintiff's statement of the "controlling question of law" is disingenuous. Moreover, there is, in this case, no "substantial ground for difference of opinion" as to the applicable law. Plaintiff is in complete agreement with this court that *Rovegno* and *Gustavson* are controlling. In light of this agreement, it is clear that plaintiff's request for certification under § 1292(b) reflects nothing more than his disagreement with this court's *application* of the governing law to the relevant facts of this case. Section 1292(b) was not designed to secure appellate review of "factual matters" or of the application of the acknowledged law to the facts of a particular case, matters which are within the sound discretion of the trial court. *Link v. Mercedes–Benz*, 550 F.2d 860, 863 (3d Cir.1977); *see also Fechter v. Connecticut General Life Ins. Co.*, 800 F.Supp. 178, 181 (E.D.Pa.1991).

■ In deciding the question of the admissibility of evidence of plaintiff's alcohol consumption in this case, this court faced the task of applying a New Jersey evidentiary rule, which has only been discussed by one New Jersey appellate court and one state trial court,[1] to a complex factual scenario. This alone, however, does not justify interlocutory appeal. I concur with those courts which have found that § 1292(b) "is not intended as a vehicle to provide early review of difficult rulings in hard cases." *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y.1982).

At least one court has held that "it is improper to certify a question of state law to the United States Court of Appeals for interlocutory review." *Cummins v. EG & G Seal-ol, Inc.*, 697 F.Supp. 64 (D.R.I.1988). The *Cummins* court noted the following dilemma, which is implicit in the certification of state law questions under § 1292(b):

> If, on the other hand, this Court were to grant § 1292(b) certification, the [Circuit Court of Appeals] would find itself in no better position to make a determination concerning state law than this Court now finds itself. In fact, it is quite likely that the Court of Appeals, should it accept the interlocutory appeal, would feel compelled to itself certify the state law issue to the Rhode Island Supreme Court. The delay that would be caused by such a circuitous certification route, of an issue that may become moot, would be inefficient for the courts involved and unfair to the litigants.

---

1. *See Gustavson v. Gaynor*, 206 N.J.Super. 540, 503 A.2d 340 (App.Div.1985), *certif. denied*, 103 N.J. 476, 511 A.2d 655 (1986); *Guzzi v. Clarke*, 252 N.J.Super. 361, 599 A.2d 956 (L.Div.1991).

*Id.* In reaching this conclusion, the *Cummins* court reflected on the history of *Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir. 1985), in which the district court certified questions of Louisiana state law under § 1292(b), which the Fifth Circuit, in turn, certified to the Louisiana Supreme Court, which declined to accept certification. As the *Cummins* court pointed out, "in *Perkins*, after yet more delay, the Fifth Circuit was compelled to decide the state law issue anyway. Had the Fifth Circuit held that a cause of action did exist, remand to the district court would have been necessary with the possibility of another appeal regarding other issues after a final judgment." *Cummins*, 697 F.Supp. at 71.

The *Cummins* court decided to reserve all state law questions for certification to the Rhode Island Supreme Court after trial. Alas, this court is without that option, as New Jersey has no certification procedure. The absence of such a procedure guarantees that, were this question to be certified under § 1292(b), the Third Circuit would be forced to predict whether this court's prediction of the New Jersey Supreme Court's probable ruling, if faced with the facts of this case, was correct.[2] I respectfully suggest that the Third Circuit is in no better position to make such a prediction than is this court.

### C. *Materially Advance the Ultimate Termination of the Litigation.*

■ Finally, plaintiff has failed to persuade this court that immediate appeal will "materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir.1974), is a good example of how certification can "materially advance" the litigation. In *Katz*, the district court certified a class of approximately 800,000 Carte Blanche cardholders pursuant to Fed.R.Civ.P. 23(b)(3), and simultaneously certified its order under § 1292(b). Carte Blanche, which opposed the class certification, prevailed on interlocutory appeal. As a result of the Third Circuit's ruling on interlocutory appeal, the case could be tried in the district court by a single plaintiff, rather than as a class action, with the attendant delays caused by the notice provisions and the close judicial scrutiny that is mandated by Fed. R.Civ.P. 23.

Thus, the character of the underlying litigation in *Katz*, and the time that it would take to pursue it, were significantly altered by the Third Circuit's decision. On the other hand, had the Third Circuit affirmed the class certification on interlocutory appeal, the underlying litigation would not have been excessively delayed, principally because the class certification question arose early in the procedural history of the case. In *Katz*, therefore, from the point of view of the district court, there was much to gain and little to lose by granting leave to take an interlocutory appeal.

By contrast, this action arises out of an accident which took place on July 28, 1991. This case has been proceeding in this court since 1993. Discovery has finally been concluded. Trial in this matter is scheduled to commence on September 16, 1996. If this question were certified, and a stay granted, under § 1292(b), trial would be postponed for an indefinite period. Ultimately, of course there would be a trial in this matter, and that trial would be of approximately the same duration as it would have been had no interlocutory appeal been taken.

In view of all these factors, it is clear that interlocutory appeal at this time will not materially advance the litigation, but rather, will result in further delay. At oral argument, plaintiff's counsel noted, in passing, that if his proposed question were certified

---

**2.** For a discussion of the virtues of state certification procedures, see *Hakimoglu v. Trump Taj Mahal Assoc.*, 70 F.3d 291, 302–04 (3d Cir.1995) (Becker, J., dissenting, joined, in this part of his dissent only, by Nygaard and Alito, JJ.) (describing the overwhelming satisfaction of federal judges with state certification procedures where they exist and urging New Jersey to adopt certification). Judge Becker quotes at length from an article by Chief Judge Sloviter, in which she demonstrates the fallibility of the Court of Appeals in predicting state law. *Id.* (quoting Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va.L.Rev. 1671, 1679–80 (1992)). In an earlier decision in this very case, I also had occasion to agree with Judge Becker on the desirability of the adoption of a certification procedure in New Jersey. *See Hulmes v. Honda Motor Co.*, 924 F.Supp. 673, 678 (D.N.J.1996).

for interlocutory appeal and this court were affirmed by the Third Circuit, then plaintiff would be proven wrong on the substantive New Jersey law. But, as plaintiff's counsel failed to acknowledge, this scenario would also mean that the trial in this matter would be needlessly delayed while the Third Circuit considered this question of state law. "Delay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial." *Baranski v. Serhant,* 602 F.Supp. 33, 36 (N.D.Ill.1985). *See also Singh,* 800 F.Supp. at 263.

In the final analysis, plaintiff's motion for certification fails because counsel has taken out of context, and distorted the clear language of this court's Opinion.

As Judge Learned Hand once observed:

Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used....

*NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2d Cir.1941). *Quod erat demonstrandum.*

Because plaintiff has failed to meet the requirements of § 1292(b), his request for interlocutory appeal will be denied. Accordingly, there is no need to entertain plaintiff's application for a stay of proceedings in this action. The Court will enter an appropriate order.